**Mary DELLOSA**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–1582.**

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1974.

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

Michael B. L. Hepps, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

WEINER, District Judge.

This action has been brought to review the denial of Black Lung benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972. 30 U.S.C. § 901 et seq. Jurisdiction is invoked pursuant to 30 U.S.C. § 923(b) which incorporates 42 U.S.C. § 405(g).

Plaintiff, Mary Delloso,[1] is the widow of Constantino Delloso who died in a mine accident in 1947. In 1970, she filed an application for Black Lung benefits with the Secretary of Health, Education and Welfare. The application was denied initially and again after a hearing by an Administrative Law Judge. When affirmed by the Appeals Council, the decision of the Administrative Law Judge became the final decision of the Secretary and thereafter this suit was filed. Presently before the court are cross motions for summary judgment.

The record is composed of, among other things, the testimony of the plaintiff and three co-workers of the decedent, medical reports from a physician who had treated the decedent, earnings reports from the Social Security Administration and the death certificate of the deceased miner. The evidence established that the decedent had been working twenty-five (25) years in the mines at the time of his death. All the witnesses testified that he suffered from most of the symptoms of Black Lung (e. g., heavy coughing, oral discharge of blood and a black substance, severe shortness of breath and loss of weight) and that as a result thereof he often had to take time off from work. Mrs. Delloso further testified that in the last year before his death he was able to work only two days a week. The witnesses also testified that even when the decedent did go to work he was unable to perform satisfactorily without the assistance of his co-workers. Dr. William A. Schmit, a physician who treated the decedent as his family doctor from 1941 to 1947, submitted two reports stating that based on his observations and treatment it was his opinion that the decedent was suffering from advanced pneumoconiosis and that if it wasn't for the mine accident he would have succumbed shortly thereafter as a result of the disease. The doctor further stated that the decedent had been referred to the University of Pennsylvania for testing and treatment in 1944. However, as these and other records have since been destroyed, plaintiff was unable to present records of the results of any type of objective medical tests.

Earnings reports from the Social Security Administration were also made part of the record. They purport to represent the decedent's reported annual earnings for the last ten years of his life (1937 to 1947). The decedent's highest reported per annum earnings appeared to have occurred in 1946 ($2,774.46) and it appeared that he would have earned at least that much had he lived through 1947.

The death certificate states that the cause of death was a fractured skull and a broken neck due to an accident in the coal mines. The certificate also contains the words "1 day" written in a box designated with the caption "DURATION."[2] Mrs. Delloso testified that she

---

1. In the caption plaintiff's name has been incorrectly spelled as "Dellosa."

2. Plaintiff contended that this notation was evidence that the miner did not die instantaneously as a result of the rock fall and that therefore pneumoconiosis was a contributing cause of death.

was told that her husband was caught in the fatal rock fall only because he was too sick to run like the other miners.

## DISCUSSION

Under the mandate of 30 U.S.C. § 921(b), the Secretary issued regulations to establish guidelines for determining eligibility for Black Lung benefits. In order for a widow to receive benefits she must qualify under the following provision:

> An individual is entitled to benefits if such individual:
>
> (a) Is the widow or surviving divorced wife of a miner;
>
> (b) Is not married;
>
> (c) Has filed a claim for benefits in accordance with the provisions of §§ 410.220–410.234;
>
> (d) Was dependent on the miner at the pertinent time; and
>
> (e) The deceased miner:
>
> (1) Was entitled to benefits at the time of his death; or
>
> (2) Died before January 1, 1974, and it is determined that he was totally disabled due to pneumoconiosis at the time of his death, or that his death was due to pneumoconiosis.

20 C.F.R. § 410.210. It is conceded by the Secretary that plaintiff has met all of the above requirements except for the provision of subsection (e)(2) that the deceased miner either have been totally disabled due to pneumoconiosis (Black Lung) or have died as a result thereof.

■ Plaintiff initially argued that the evidence supports a finding that the decedent miner's death was due to pneumoconiosis. However, the only evidence which remotely supports that contention is the hearsay statement by the plaintiff as to what she was told by the decedent's boss and the notation on the death certificate which may or may not indicate that death occurred as much as twenty-four (24) hours after the accident. We note that the record also contains a statement by the plaintiff that when she arrived at the hospital upon notice of the accident her husband was already dead. Furthermore, while pneumoconiosis may have slowed the decedent in his attempt to escape the rock fall, that does not as such make it a cause of his death. The Administrative Law Judge found that death was not due to pneumoconiosis and his finding on this point certainly cannot be challenged.

The crux of plaintiff's argument was that the decedent was totally disabled due to pneumoconiosis at the time of his death. Under the Regulations as applied to the facts of this case, there are essentially three ways through which plaintiff could establish that the decedent was totally disabled due to pneumoconiosis: (1) through the interim adjudicatory rules (20 C.F.R. 410.490); (2) through satisfaction of the general criteria for determining total disability (20 C.F.R. 410.422, 410.424, 410.426); and (3) through establishing the existence of complicated pneumoconiosis and thereby creating an irrebutable presumption of total disability (20 C.F.R. 410.-418).

■ The first alternative is through the interim adjudicatory rules. These rules were established as a short cut for processing all the pending claims at the time of the 1972 amendment of the Act. However the regulation requires the claimant to produce either x-rays which establish pneumoconiosis or ventilatory studies which demonstrate specified values. See 20 C.F.R. 410.490(1)(i)–(1)(ii). The evidence presented by the plaintiff was lacking in either x-ray results or any other ventilatory study which would satisfy this regulation. Therefore, plaintiff's contention that the decedent should have been found to have been totally disabled at the time of death under this regulation is without merit.

■ The second alternative open to plaintiff was to qualify the decedent miner under the regulations which set forth the general criteria for determining total disability due to pneumoconiosis. 20 C.F.R. 410.422(c). This can be

met either purely by medical evidence or by a combination of medical evidence and other evidence indicating the miner's inability to do his coal mining work or any other kind of comparable and gainful employment. To establish total disability under this regulation by medical evidence alone requires clinical and laboratory diagnoses which were unavailable in this case. See 20 C.F.R. 410.424. However when both the medical evidence and the testimony of the witnesses presented is considered together, the plaintiff could have established the decedent miner's total disability under these general criteria. 20 C.F.R. 426(d) states, in relevant part:

> (d) Where a ventilatory study and/or a physical performance test . . . cannot be obtained . . . pneumoconiosis may nevertheless be found totally disabling if *other relevant evidence* establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents (or prevented) him not only from doing his previous coal mine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work. (emphasis added)

The term "other relevant evidence" was defined by the regulations to include

> any medical history, evidence submitted by the miner's physician, his spouse's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the individual's physical condition, and other supportive materials.

20 C.F.R. 410, 414(c).

■ The evidence presented in this case included the statement of the decedent's physican that the miner suffered from pneumoconiosis and other evidence that the decedent was unable to properly perform his work in the coal mine.

However the Administrative Law Judge found that the decedent's earnings record for 1945–47 indicated that the miner was making more money than he had in the past several years and that therefore he was engaged in gainful work and not totally disabled. We have concluded that this finding was not based on substantial evidence.

In his decision, the Administrative Law Judge stated that the records showed that the decedent's annual income was $1266.41 for the years 1937 to 1945. This was based on figures taken from page 1 of Exhibit 17 which is entitled "Earnings Record—P.I.A. Determination." However, that figure merely appears to be a hypothetical yearly average for those years based on a total figure which is reported in the "Itemized Statement of Earnings" on page 2 of Exhibit 17. Since the total on page 2 of the exhibit is based on the 10 year period from 1937 to 1947, an annual average of that figure spread over only eight years could not be accurate. The only figures which could have any pretension of accuracy must be those on page 2 itself. Even those figures are sporadic at best. For example, there are no reported earnings for 1939 or 1941, only $157.11 reported in 1942 and then as much as $893.79 reported in 1943. The pattern is certainly unusual for someone who was supposedly working in the mines all those years.[3] While it is true that the figures for 1945 to 1947 are substantially higher than reported earnings for prior years, the inconsistencies in the figures for the earlier years makes the entire report of questionable reliability. As the Administrative Law Judge relied in a large part on the accuracy of these figures and evidently made certain misassumptions, we believe the Secretary should be given another opportunity to reexamine its decision.

3. An investigative report done by the Secretary listed several mining companies where the decedent was found to have worked during this period. See Exhibit 10. However a number of these companies are not listed on the earnings report as having reported that the decedent had any earnings during that period.

Another reason we believe that remand is appropriate is because of the Administrative Law Judge's failure to fully consider the testimony of the plaintiff and the decedent's co-workers as to his inability to adequately perform his mine work. In Social Security Ruling 73–36, the Secretary stated that there were circumstances under which a miner still employed in the mines at the time of his death could be found totally disabled. For example, the Secretary noted that "sporadic work, poor performance and marginal earnings" might not preclude a finding of total disability. Plaintiff presented substantial testimonial evidence that the decedent performed poorly on the job and that he often missed days because of his weakened condition. While the Administrative Law Judge as fact finder has the right to reject this testimony entirely, failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974). This court has a number of times remanded denials of disability insurance benefits to the Secretary when it failed to make specific findings as to the validity of a claimant's subjective complaint that pain precluded him from gainful employment. See Barats v. Weinberger, 383 F.Supp. 276 (E.D.Pa. filed Oct. 18, 1974); Baith v. Weinberger, 378 F.Supp. 596 (E.D. Pa.1974). See also Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971).

Finally we also feel that remand is appropriate because the Administrative Law Judge failed to make any finding as to the existence or nonexistence of complicated pneumoconiosis. If complicated pneumoconiosis is established there is an irrebutable presumption that the miner was totally disabled. See 20 C.F.R. 410.418. The decedent miner's physician submitted reports setting forth certain findings and concluding with the diagnosis that the decedent suffered from "far advanced" and "advanced" anthracosilicosis and pneumoconiosis. Whether the doctor's diagnosis and underlying findings would support a determination of complicated pneumoconiosis is a question to which the Administrative Law Judge failed to address himself. While there may be serious doubt as to whether complicated pneumoconiosis is established by the record, sufficient evidence was presented to entitle the plaintiff to a specific finding on that point. See 20 C.F.R. 410.418(c).

Having thoroughly reviewed the record and considered the arguments of counsel, it is our conclusion that based upon the Administrative Law Judge's almost total reliance on misinterpreted and suspect earnings reports, his failure to specifically reject or evaluate the testimonial evidence, and his failure to make a finding as to the existence of complicated pneumoconiosis, this case shall be remanded to the Secretary for further findings.