**Verna M. COLLINS, Appellant,**

v.

**F. David MATHEWS, Secretary of Health, Education and Welfare, Appellee.**

No. 76–1247.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1976.

Decided Dec. 14, 1976.

Winter, Circuit Judge, filed a dissenting opinion.

J. N. Harman III, Welch, W. Va., for appellant.

Diane C. Moskal, Asst. Regional Atty., Dept. of HEW, Philadelphia, Pa. (Stephanie W. Naidoff, Regional Atty., Dept. of HEW, Philadelphia, Pa., John A. Field, III, U. S. Atty., Charleston, W. Va., Ray L. Hampton, II, Asst. U. S. Atty., Huntington, W. Va., on brief), for appellee.

Before WINTER, CRAVEN and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Verna M. Collins, claimant and widow of a coal miner who was killed in a mine accident, appeals from the denial of widow's black lung benefits by the Department of Health, Education and Welfare. This denial was affirmed by the District Court below. *Collins v. Weinberger,* 406 F.Supp. 552 (S.D.W.Va.1975). We reverse. Viewing the record as a whole, there is not substantial evidence [1] to support the Secretary's ultimate finding that the decedent was not totally disabled [2] due to pneumoconiosis [3] (black lung) at the time of his death, notwithstanding the fact that he was employed and working when he died.[4] Instead, we conclude that Mrs. Collins "has more than met her burden here and is entitled to the relief she seeks." *White v. Celebrezze,* 359 F.2d 138, 140 (4th Cir. 1966).

## I.

### THE EVIDENCE BELOW

The record discloses that Kenny Collins, a coal miner for more than 20 years, died on June 23, 1966, as a result of crushing injuries to the head and chest which were multiple and severe. These injuries were suffered in a roof fall in a coal mine in which he was working at the time of death. X-rays taken at the Baltimore City Hospital in 1962 and 1965 revealed emphysema and fibrosis. Although there were conflicting interpretations of these X-rays, the Administrative Law Judge determined the deceased coal miner had simple pneumoconiosis. This was established by cumulative reports and interpretations. The Appeals Council

1. *See* Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

2. "Total disability" is defined in terms of the meaning given it by the regulations of the Secretary of HEW, except that the Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, mandates that such regulations shall provide that a miner shall be considered totally disabled when, as a result of pneumoconiosis, he is unable to engage in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which the miner previously engaged with some regularity and over a substantial period of time. 30 U.S.C. § 902(f).

3. "Pneumoconiosis" is defined as a chronic dust disease of the lung arising out of employment in a coal mine. 30 U.S.C. § 902(b).

4. The claimant otherwise fully qualified for widow's benefits. 20 CFR 410.210.

for the Department of Health, Education and Welfare adopted this finding as that of the Secretary. The basis for denying the widow's application for benefits was her failure in showing that her husband was totally disabled due to pneumoconiosis, preventing him from engaging in comparable and gainful work. The earnings record of the deceased miner, although low, was held to be sufficiently consistent to warrant a declaration that he had been gainfully employed with some regularity over a substantial period of time.[5] Even though Collins did work, he was too sick to work much of the time. The uncontradicted testimony was that he could work only one-third of the time. The last year of his life, he "would just work when he was able, and maybe sometimes two weeks at a time . . . he'd be down that he couldn't work . . . he'd get shots . . . and maybe he'd be able to work two or three days the next week." The deceased miner was described as a "sometimes worker" during the latter part of his life. He tried to work in the mines when he could because he had a wife and four children to support, and because he knew no other way to make a living. He had no more than a seventh grade education, no military experience, and no vocational training. When it was physically possible to do so, he worked in the coal mines because of his strong will to do so. He refused to accept physical defeat and thus be forced into living totally from welfare benefits. Up until 1964, Collins worked as a "coal loader", a job requiring some strenuous effort. After 1964 and up until his unfortunate death, Collins was given lighter tasks such as operating machines and doing other odd jobs. Because of his economic necessity and willingness to work when able, management felt sympathy for the deceased and provided light labor for him, even though he could not work regularly. The record further reflects that the deceased miner suffered great pain whether working or not. During the last six months of his life, he only earned $1,243. This amount is considerably below the poverty level.[6]

## II.

### THE RULINGS BELOW

Benefits were denied on the ground that the widow failed to show that at the time of her husband's death, he was totally disabled due to pneumoconiosis. With the deceased miner having established the existence of simple pneumoconiosis, a rebuttable presumption arises that the widow is entitled to the black lung benefits. 30 U.S.C. § 921. In his decision which was affirmed, the Administrative Law Judge held that this presumption was rebutted by evidence that the miner was doing his usual coal mine work, or comparable and gainful work. 20 CFR 410.490(c); 30 U.S.C. § 902(f).

## III.

### DISCUSSION AND REASONS FOR REVERSAL

There are certain limited circumstances under which a miner can, through sheer determination, continue to work and still qualify as totally disabled. In order to fit within this narrow category of "working disabled", it is necessary for a claimant to show that the miner's work attendance was

5. Records of the Social Security Administration reveal the deceased miner's earnings for the last 9½ years of his life to be as follows:

| Year | Earnings |
|------|----------|
| 1957 | $3,169.94 |
| 1958 | 2,998.12 |
| 1959 | 2,265.92 |
| 1960 | 2,448.85 |
| 1961 | 2,995.63 |
| 1962 | 2,502.54 |
| 1963 | 3,544.88 |
| 1964 | 2,453.50 |
| 1965 | 3,224.04 |
| 1966 (6 months) | 1,243.00 |

6. According to the United States Bureau of Labor Statistics, the poverty statistics for West Virginia in 1966 show the maximum poverty level for a family of this size to be $4,135 in an urban area, and $2,900 in a rural area. Based on the record, the Collins family would fit in the rural category.

sporadic, his performance poor, and his earnings marginal.[7] *Dellosa v. Weinberger,* 386 F.Supp. 1122 (E.D.Pa.1974), presents a situation similar to the instant case. In *Dellosa,* a deceased coal miner had worked in coal mines for 25 years, and suffered at least from simple pneumoconiosis. He was killed in a mine accident. During the last year of his life, he could work only two days a week, and then unsatisfactorily without assistance from co-workers. The year before he died, he earned $2,744.46, the highest sum in the past 10 years. The Administrative Law Judge nevertheless found that the miner was gainfully employed, giving weight to his earnings record. Relying upon Social Security Ruling 73–36, the District Court remanded because the Administrative Law Judge failed to fully consider the testimony regarding the deceased miner's inability to adequately perform his work, and because of a misinterpretation of the earnings record.

Other cases have recognized that a miner may have been employed, yet be totally disabled due to pneumoconiosis if his job was "make-work".[8]

30 U.S.C. § 902(f) mandates that the regulations regarding black lung benefits "shall not provide more restrictive criteria than those applicable under section 423(d) of Title 42 (Social Security Act)." Therefore, if the "total disability" test is met under the social security criteria, then total disability due to black lung is also established.

■ The total disability criteria for one still working were examined in *Leftwich v. Gardner,* 377 F.2d 287 (4th Cir. 1967). There we held that a 52-year-old manual laborer was totally and permanently disabled, and entitled to disability benefits under the Social Security Act. The claimant, Leftwich, suffered from spondylolisthesis,

had congenital marked curvature of the spine, and could not stoop, bend or lift, suffered pain when he sat for more than 10 minutes and constantly while standing. The fact that he chose to work daily as a dishwasher to support his family did not bar his entitlement to disability benefits. Although Leftwich was at work for eight hours, he actually worked only four to five hours per day. This Court refused to punish the claimant simply because he sought to support his family, despite physical problems in doing so. Further, in *Wilson v. Richardson,* 455 F.2d 304 (4th Cir. 1972), the Court noted that the 1967 amendments to the Social Security Act legislatively modified the holding in *Leftwich.* However, if a disabled worker demonstrates his inability to be substantially gainfully employed, such claimant may still be entitled to disability benefits. As evidenced by *Wilson, supra,* this may hold true even though the claimant earns in excess of the average monthly maximum set out by the Secretary.

In *Adkins v. Gardner,* 392 F.2d 184 (4th Cir. 1968), this Court held that a claimant who worked in a coal mine could nevertheless be totally disabled. In *Adkins,* the claimant had worked in West Virginia coal mines for 35 years, was substantially illiterate, and suffered serious health maladies. Although he worked, he was physically able to do only one-third of his share. This Court held that the claimant was incapacitated to perform substantial gainful employment.

■ Specifically, we find that the Court below erred in ascribing controlling significance of the deceased miner's earnings record. The statute says a miner is totally disabled due to pneumoconiosis when it prevents him from engaging in gainful employment in a mine or mines in which he previously engaged with some regularity over a substantial period of time. It is

---

7. *See* Social Security Ruling 73–36.

8. *See* Felthager v. Weinberger, 529 F.2d 130, 133 (10th Cir. 1976), *citing* Lawson v. Weinber-

ger, 401 F.Supp. 403 (W.D.Va.1975); and Rowe v. Weinberger, 400 F.Supp. 981 (W.D.Va.1975).

argued that although the deceased miner was called a "sometimes" worker, the miner's earnings record indicates that he had consistently worked at the same level throughout his life. The Secretary submits that the earnings record provides one of the most objective measures of Collins' continuing ability to be gainfully employed, and that there is not a decrease in wages between 1958 and 1966. We find that the Secretary placed undue weight on the consistent earnings of the miner throughout his lifetime. As the claimant points out, and to this we take judicial notice,[9] during the last 10 years of the deceased miner's life, most wages increased. This was particularly so in the coal fields of West Virginia where the miner worked.[10] Yet, his earnings did not rise from year to year as did those of his co-workers. Thus, his real wage rate reflects a decrease in earnings, and according to the record as a whole it likewise reflects the miner's lack of regularity in work. Congress specifically requires that the miner be able to work "with some regularity", which the deceased coal miner wasn't able to do.

The Secretary argues that, rather than proving a serious lung problem that became progressively worse, evidence proffered by the claimant indicated her deceased husband's able capacity to work. This is shown, the Secretary submits, because he was planning to take off work for his scheduled vacation just as any regular employee. This argument is groundless. It is common knowledge in the coal fields that when "miner's vacation" comes in the middle of every summer, the mines close for two weeks. This occurs regardless of whether you are sick or well, or regularly employed or not.

By denying benefits where evidence demonstrates a miner to be "totally disabled" within the statutory meaning, coal miners would be motivated to quit work in order to protect entitlement to black lung benefits. We find that the law was not intended to be so construed, and is contrary to public policy. When a disabled coal miner chooses to make a heroic effort to work, even when physically unable to do so, he or his family should not be deprived of benefits which Congress intended.

## IV.

## CONCLUSION

The claimant is entitled to widow's black lung benefits.

*REVERSED.*

WINTER, Circuit Judge (dissenting):

From my analysis of the record, I can neither conclude that the Secretary's finding that the decedent was not totally disabled from pneumoconiosis at the time of his death is not supported by substantial evidence, nor that the only substantial evidence requires the converse finding. I respectfully dissent.

The principal evidence to support the Secretary's finding is the earnings record of the deceased. It shows that for the full eight years prior to his death, his earnings remained relatively constant. The record is silent as to the average hourly wage in the coal fields of West Virginia throughout the crucial period and this is not a matter of which I feel free to take judicial knowledge. To my mind, the majority's inference that Collins worked only because "management felt sympathy . . . and provided light labor for him" is unwarranted. His earnings record shows that he worked for divers employers. One could infer from that fact that it was very unlikely that Collins performed only "make-work." Certainly the Secretary was not required to draw the majority's inference; he could well draw that suggested by me.

**9.** This Court took judicial notice of a matter of common knowledge in *Cooke v. Celebrezze,* 365 F.2d 425 (4th Cir. 1966).

**10.** The rate of pay increase for United Mine Workers of America from 1956 to 1966 was 34.25%. Dept. of Labor, Bureau of Statistics (1973), Bull. 1799, Wage Chronology, 9–14, 17.

Overall, I do not doubt that at the time of his death Collins was engaged "in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which [he] previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f). It follows that the finding that he was not disabled should be unassailable.