Mary C. HOLLEY, Plaintiff,

v.

The Honorable Joseph A. CALIFANO, Jr., Defendant.

Civ. A. No. 75–626.

United States District Court, District of Columbia.

Aug. 25, 1977.

Louis Fireison, Bethesda, Md., for plaintiff.

Eric B. Marcy, Ass't U. S. Atty., Justice Dept., Washington, D. C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Mary C. Holley, the widow of a coal miner, seeks the reversal of the decision of the Secretary of Health, Education and Welfare (H.E.W. or Agency) denying her claims for "black lung" benefits arising from the total disability of her late husband, Luther Holley. Her suit is filed under the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972 (Coal Mine Act),[1] and she contends that the administrative record will not support the Secretary's finding that her husband was not totally disabled by the disease of pneumoconiosis at the time of his death.

The history of this case is unusual. Twice it has been before an administrative law judge, and twice it has been remanded to the Agency for the submission of additional evidence. Essentially, the case concerns the Agency's refusal to believe uncontradicted evidence that plaintiff's husband was retained by his employer solely as an accommodation and in recognition of years of service. Both parties have moved for summary judgment. After consideration of the points and authorities, the affidavits and the administrative record,[2] the Court concludes that plaintiff's motion should be granted because of the Agency's clear disregard of the probative evidence.

The relevant and undisputed facts concern the deceased's physical condition at the time of his death on February 19, 1955, due to coronary thrombosis. It is uncontroverted that Mr. Holley was employed as a coal miner for more than fifteen years immediately prior to his death. During that time he served as a coal cutter and loader and, as his health deteriorated, as a tram motor operator and as a pumpman. By the time of death, he was severely ill and could breathe only with great difficulty. He was unable to function in a normal manner and experienced difficulty with such minor activities as climbing steps and walking on

1. Specifically, plaintiff's claims are made under Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972, 30 U.S.C. § 901 *et seq.*

Jurisdiction is premised upon 30 U.S.C. § 923(b) and 42 U.S.C. § 405(g), which is incorporated into the former by reference.

2. Reference is made to the administrative record by the designation "A.R." and the appropriate pages.

level ground. A.R. at 47–56. In addition, it is undisputed that during the last year of his life, Holley's employer provided him with a bench so that he could lie down whenever breathing became too difficult. A.R. at 142, 146.

■ The issue here, however, is not whether plaintiff's husband was substantially ill at the time of his death, but whether he was "totally disabled" within the meaning of the statute. To be entitled to widow's benefits under the Coal Mine Act, plaintiff must establish that her husband died before January 1, 1974, and that pneumoconiosis either caused his death or totally disabled him at the time of his death. 20 C.F.R. § 410.210. Mrs. Holley testified that her husband was totally disabled. In that regard, if she can demonstrate that her husband suffered from a completely disabling chronic respiratory or pulmonary impairment, he will be presumed, in the absence of contrary evidence, to have been totally disabled from pneumoconiosis. 20 C.F.R. § 410.414(b).[3] Such a respiratory impairment may be proven by medical evidence or, as here, by the testimony of the deceased's spouse, co-workers and others with knowledge of his physical condition. 20 C.F.R. § 410.414(c). However, Mr. Holley can be considered to have been totally disabled only if, as a result of pneumoconiosis, he was incapable of engaging "in gainful employment requiring the skills and abilities comparable to those of any employment in a mine . . . in which he previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f).

The defendant contends that a finding of complete disability is not warranted because at the time of death, Mr. Holley was employed as a pumpman on a full-time basis. He argues that the position itself and the deceased's sustained level of earnings during the last years of his life constitute persuasive evidence of legitimate gainful employment.[4]

Plaintiff argues that the administrative law judge's principal reliance upon these factors belies his ability to analyze realistically the presented evidence. The undiminished level of the deceased's earnings, for example, is said to result not from a continued ability to work in a comparable area of employment, but from a clause in the deceased's union contract which forbade the reduction of a miner's salary so long as he was at least nominally "fully employed." Moreover, plaintiff argues that where the operative facts occurred more than twenty years ago and where objective evidence such as medical and work records are non-existent, principal reliance should be placed upon testimonial evidence. Here, it is argued, that evidence establishes facts that sufficiently explain any apparent inconsistency which arises from the fact that Mr. Holley was employed at the time of his death.

There is merit to plaintiff's position. Both the Agency and the courts have recognized certain situations in which full-time employment will not bar the recovery of black lung benefits. *Dellosa v. Weinberger,* 386 F.Supp. 1122, 1126 (E.D.Pa.1974), for instance, refers to Social Security Ruling 73–36 and notes that "'sporadic work, poor performance and marginal earnings' might not preclude a finding of total disability." Similarly, in *Rowe v. Weinberger,* 400 F.Supp. 981, 982 (W.D.Va.1975), a district court noted that "[w]here a miner missed many days of work because of [a] breathing problem and where he was given some make-work job, not comparable to his usual coal mine work, one cannot say that he was regularly employed at the time of his death

**3.** The administrative law judges found that plaintiff's husband had worked in excess of fifteen years, and therefore, she is entitled to the presumptions afforded by the statute and its regulations. A.R. at 8, 126; 20 C.F.R. § 410.414(b).

**4.** The January 11, 1977, Appeals Council decision suggests that plaintiff's testimony concerning the deceased's employment was inconsistent. This alleged inconsistency, however, is explained by plaintiff as resulting from a misunderstanding as to the judge's question concerning her husband's work habits. A.R. at 143.

so as to rebut any presumption of total disability." In *Rowe,* there was testimony that the deceased had been permitted to perform an easier task than he had in the past due to his deteriorating condition. *Id.* Of course, total disability must be considered in connection with the deceased's age, education, and experience, 20 C.F.R. § 410.426, and the mere fact that Mr. Holley's last position was not physically taxing will not qualify it as a "makeshift" job. *See Lawson v. Weinberger,* 401 F.Supp. 403, 405 (W.D.Va.1975).

▆▆▆ In reviewing the H.E.W. decision, this Court may not substitute its judgment for that of the Agency. This Court may overturn the administrative decision only if it is not based upon substantial evidence. *Baker v. Secretary of Health, Education and Welfare,* 383 F.Supp. 1095 (W.D.Va. 1974). If the H.E.W. decision is based upon evidence which a reasoning mind would accept as sufficient to support that conclusion, it must stand. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This case is a close one, but when measured by this standard, the Court finds that the decision denying benefits to Mrs. Holley must be reversed.

The administrative law judge ruling, adopted as the Secretary's decision and here under review, is based in large part upon (1) the judge's reliance upon the deceased's steady earnings record and (2) his disbelief of testimony relative to whether the deceased was "carried" by his employer. A.R. at 127–28. Particular emphasis was placed upon the fact that no documents were submitted from the deceased's employer to substantiate the claim that Mr. Holley was not a productive employee. In light of this fact and Mr. Holley's salary, the opinion concludes that it is unlikely that the employer would have provided a rest bench or made other accommodations to keep plaintiff employed. A.R. at 128.

The principal difficulty with this approach is that without the benefit of conflicting evidence, the administrative law judge substituted his own speculation for the only evidence by which plaintiff could prove her claim. Two acquaintances of the deceased testified by affidavit that Mr. Holley was an ill man who had such difficulty breathing and walking that he was not an effective worker. A.R. at 159–64. They have corroborated the statement of the plaintiff and her son that the deceased was permitted to rest during the work day on a bench which his employer provided. Indeed, one of the acquaintances, a co-worker of the deceased, made the following statement:

> 3. Mr. Holley was always coughing and wheezing and constantly spitting out black phlegm. He was unable to stand on his feet at all and was unable to lift any objects. During the days that Mr. Holley worked in the mine, he was able to lie down since there was a bed near his place of employment.
>
> 4. Mr. Holley would come home on the days in which he showed up to work because he was unable to breathe in the mines. He was given the job of pumpman since he would not have to do any work and only had to sit and watch the machine. In addition, the bed was available next to him so that he could lie down, which he frequently did.

A.R. at 159.

▆▆▆ While it may have been reasonable for the administrative law judge to question the testimony and affidavits of plaintiff and her son, this Court is at a loss to understand his disbelief of this uncontradicted affidavit. The only plausible explanation suggested by the opinion is the judge's apparent conclusion that a large coal company would not pay full wages to an employee who was not "pulling his weight." There is nothing in the record to support this conclusion, however, and such speculation, without more, cannot be permitted to outweigh sworn testimony.[5]

5. The time period here is well before the passage of the legislation which has since been enacted to aid ailing miners and their families, and the coal company may have preferred to "carry" Mr. Holley rather than to dismiss him during his waning years.

One of the principal reasons for the passage of the 1972 amendments to the Coal Mine Act was Congress' recognition that too few applicants were able to secure benefits under the existing legislation. S.Rep.No. 743, 92nd Cong., 2nd Sess. 3, *reprinted in* [1972] U.S.Code Cong. & Admin. News 2305, 2307. This point was made clear in the report of the Senate Committee on Labor and Public Welfare, which states:

> The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve upon the 1969 provisions so that the cases which should be compensated, will be compensated. *In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors.*

*Id.* at 11, [1972] U.S.Code Cong. & Admin. News at 2315 (emphasis added). Here, the administrative judge has negatively construed each and every element brought forth by plaintiff in support of her claim. As the events in question transpired more than twenty years ago, there is an understandable dearth of hard evidence. The evidence that is available, however, is plentiful, and there is no contradictory evidence which would permit the judge to ignore the uniform judgment of the witnesses that the deceased was "carried" by his employer.

In light of this fact, plaintiff must be presumed to have been totally disabled within the meaning of the statute at the time of his death. 20 C.F.R. § 410.414(b). Since virtually no evidence was introduced below to establish either that Mr. Holley did not suffer from the disease or that his respiratory or pulmonary impairment did not arise out of coal mine employment, the decision of the Agency must be reversed. 20 C.F.R. § 410.414(b)(2).

An appropriate order will be entered.