Louis SOUCH, Appellee,

v.

Joseph A. CALIFANO, Jr., Sec. of
Health, Education and
Welfare, Appellant.

Louis SOUCH, Appellant,

v.

Joseph A. CALIFANO, Jr., Sec. of
Health, Education and
Welfare, Appellee.

Nos. 78–1521, 78–1522.

United States Court of Appeals,
Fourth Circuit.

Argued March 13, 1979.

Decided May 1, 1979.

Fred Marinucci, Dept. of Health, Ed. and
Welfare, Philadelphia, Pa. (Stephanie W.
Naidoff, Regional Atty., Joan E. Kaehne,
Asst. Regional Atty., Region III, Dept. of
Health, Ed. & Welfare, Philadelphia, Pa.,
Stephen G. Jory, U. S. Atty., Elkins, W. Va.,
William D. Wilmoth, Asst. U. S. Atty.,
Wheeling, W. Va., on brief), for appellant.

Allan N. Karlin, North Central West Vir-
ginia Legal Aid Society, for appellee.

Before WINTER and HALL, Circuit
Judges, and YOUNG *, District Judge.

K. K. HALL, Circuit Judge:

Louis Souch [hereinafter "claimant"]
filed a claim for black lung disability bene-
fits pursuant to the Federal Coal Mine
Health and Safety Act of 1969, as amended
in 1972, 30 U.S.C. § 901 *et seq.* After the
claim was denied on the administrative lev-

* Honorable Joseph H. Young, United States District Judge for the District of Maryland, at
Baltimore, sitting by designation.

el, he filed a civil action in the United States District Court for the Northern District of West Virginia. On cross-motions for summary judgment, the court reversed the Secretary, holding that claimant had been denied procedural due process when the administrative law judge denied his request to subpoena certain physicians and then relied on those physicians' reports as substantial evidence to deny the claim. The court remanded the claim for further proceedings, with instructions that the claimant be given an opportunity for a "meaningful hearing." The Secretary appeals,[1] and we affirm.

Claimant was 58 years old at the time of the administrative hearing and claimed more than 25 years of coal mine employment.[2] In support of his entitlement to benefits he submitted the following medical evidence: three X-rays which were interpreted as positive for pneumoconiosis by Dr. Nelson, Dr. Goerlich and Dr. Harron; pulmonary function studies showing an $FEV_1$ of 1.700 liters, which studies were deemed unacceptable by the ALJ because they were unaccompanied by the requisite tracings; a report from Dr. Howes, an examining physician, diagnosing hypertension and angina pectoris;[3] and a report from Dr. Haymond, claimant's regular treating physician, diagnosing pneumoconiosis and pulmonary hypertrophy. Claimant had previously been awarded workmen's compensation benefits (15% permanent partial disability) for pneumoconiosis.

Claimant and his wife testified that he had difficulty sleeping because of shortness of breath, that he couldn't make love, dance or do any work around the house, that he had coughing spells every morning, and that he had difficulty walking.

Claimant had continued his coal mine employment until late December, 1973, six months after the date on which jurisdiction over black lung claims passed from the Department of Health, Education and Welfare to the Department of Labor. However, claimant testified that he could not and did not perform his regular duties during these last months; rather, he was "carried" by fellow miners as he completed the months necessary to fully qualify for his pension. A fellow employee testified at the hearing that claimant had been "carried," and three other fellow employees submitted affidavits to this effect. This evidence of heroic effort, see Collins v. Mathews, 547 F.2d 795 (4th Cir. 1976), was not contradicted.

To rebut the claim, the Secretary submitted the following medical evidence: reports from Dr. Jacobson and Dr. Rosenstein, who both re-read the Harron X-ray and interpreted it as negative for pneumoconiosis; a report from Dr. Shaffer, who interpreted an X-ray as showing "no chest pathology except possibly [mild emphysema];" and a report from Dr. Soxman, who examined claimant and found normal chest expansion, interpreted an X-ray as negative for pneumoconiosis, and submitted pulmonary function studies showing an $FEV_1$ within normal limits. These latter studies were deemed unacceptable by the ALJ because they were not accompanied by the requisite tracings.

To resolve the conflict in the X-ray evidence, claimant's counsel requested that the ALJ subpoena Dr. Jacobson, Dr. Rosenstein and Dr. Soxman; counsel stated that he would put the disputed X-rays under a "light box" and have the doctors testify at the hearing as to "what they saw and didn't see there." This request was denied, although the ALJ did allow counsel to propound interrogatories to the doctors. Counsel then requested that the ALJ subpoena

---

1. We conclude that we have jurisdiction to entertain this appeal. Cf. Cohen v. Perales, 412 F.2d 44, 48 (5th Cir. 1969), rev'd on other grounds sub nom. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (social security benefits case).

2. Claimant was only permitted to prove 10 years of employment, thus establishing the causal presumption of 20 C.F.R. § 410.416. See § III infra.

3. The notation "R/O pneumoconiosis" appears in Dr. Howes' report. Although R/O stands for "rule out," counsel informed this court at oral argument that the designation is common medical shorthand for "consider further."

the negative X-rays (the Harron X-ray which had been re-read by Dr. Jacobson and Dr. Rosenstein, and the Soxman X-ray), so that he could have them re-read by claimant's physicians. This request was also denied.

On May 13, 1976 the ALJ issued his decision denying benefits. He first held that he had no jurisdiction over the claim, since claimant had worked in the mines after June 30, 1973, the date on which jurisdiction passed from the Department of Health, Education and Welfare to the Department of Labor. The ALJ went on, nonetheless, to evaluate the medical evidence. Finding that the negative readers—Drs. Jacobson, Rosenstein and Soxman—were "qualified," he held that claimant had failed to establish the existence of pneumoconiosis by a preponderance of the X-ray evidence. Finally, the ALJ discounted the findings of claimant's treating physician, Dr. Haymond, because his report was in one detail inconsistent with that of Dr. Goerlich: Dr. Haymond found "right ventricular hypertrophy," while Dr. Goerlich found "left ventricular hypertrophy."

## I.

As a threshold issue we review the ALJ's holding that he had no jurisdiction. Claimant filed for benefits on June 1, 1973, although he continued his coal mine employment through December 28, 1973. In *Talley v. Mathews,* 550 F.2d 911 (4th Cir. 1977) we held that, where a claim was filed before July 1, 1973, the Secretary of H.E.W. had jurisdiction notwithstanding the fact of claimant's continued employment after that date. Further, the claimant was entitled to have his claim evaluated under the liberal interim criteria set forth in 20 C.F.R. § 410.490(b). Of course,

"[t]he fact that plaintiff . . . continued to work in the mines beyond June 30, 1973 certainly bears relevance as to whether [he was] totally disabled on that

date, and the Secretary is entitled to consider this with all the other evidence." *Id.* at 918.

Because the ALJ in this case did not have the benefit of our decision in *Talley,* he failed to consider the claim under § 410.-490(b). On remand, claimant is entitled to such consideration. The Secretary may take into account claimant's employment through late 1973, but should evaluate this evidence in light of *Collins v. Mathews,* 547 F.2d 795 (4th Cir. 1976).[4]

## II.

■ The central issue in this case is whether the district court erred in holding that claimant had been denied procedural due process at the administrative level when the ALJ denied his request to subpoena the negative readers and then relied on those readers' reports as substantial evidence to deny the claim.

## A.

The focus of our analysis is *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), relied on by the court below. In *Perales,* claimant was denied social security disability benefits based largely upon written reports by consulting physicians retained by the Secretary. The physicians did not testify at the administrative hearing, and the claimant argued that their reports were inadmissible hearsay. The gravamen of the complaint was that the claimant was denied procedural due process where the Secretary relied on hearsay evidence to deny his claim for benefits.

The Supreme Court agreed that the reports were hearsay, but concluded that "a written report by a licensed physician who has examined the claimant . . . may be received as evidence in a disability hearing and, despite its hearsay character and an absence of cross-examina-

4. Although claimant's evidence of "heroic effort" was strong, the ALJ's pre-*Talley* error of law precluded his consideration of the issue. At oral argument on appeal, counsel for the Secretary noted that claimant's earnings did not decrease during the last six months of his employment. We were careful to point out in *Collins* that this fact is not determinative. 547 F.2d at 799.

tion, and despite the presence of opposing direct medical testimony and testimony by the claimant himself, may constitute substantial evidence supportive of a finding by the hearing examiner adverse to the claimant, *when the claimant has not exercised his right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician.*"

*Id.* 402 U.S. at 402, 91 S.Ct. at 1428 (emphasis added). The right to subpoena derived from 20 C.F.R. § 404.926 which, we note, is identical in substance to its counterpart in the black lung regulations, 20 C.F.R. § 410.-639.[5]

Significantly, it was also noted in *Perales* that

"[t]he physicians' reports were on file and available for inspection by the claimant and his counsel."

*Id.* at 407, 91 S.Ct. at 1430. Although the Court was addressing the issue of notice (whether claimant had notice of the evidence to be used against him), the availability of the consultants' reports for inspection by the claimant supported the Court's conclusion that use of the consultant system did not infringe upon the integrity and fairness of the social security hearing procedures.

In the case before us, we agree with the district court's conclusion that the decision of the Secretary denying benefits must be reversed. Although claimant submitted three X-rays which had been interpreted as positive for pneumoconiosis, the ALJ virtually ignored this evidence and chose instead to credit the negative readings of three black lung consultants. Claimant attempted to subpoena the consultants and, failing this, attempted to subpoena the two X-rays which had been interpreted as negative. Both requests were denied. In essence, the ALJ removed any possibility of claimant winning on the X-ray evidence by refusing to credit positive X-rays and simultaneously preventing any means of rebutting the negative X-rays.

We hold that where a claimant's request to subpoena negative readers is denied and the disputed X-rays are not made available to him for inspection and re-reading, the Secretary may not use the X-rays as substantial evidence to deny the claim. *Richardson v. Perales, supra.*[6] Such a result surely offends standards of fundamental fair play. And, while the use of interrogatories may to some degree be a substitute for cross-examination of negative readers, *see Phillips v. Mathews,* 412 F.Supp. 238 (W.D.Va.1976), we do not think them sufficient to remedy a claimant's inability to adequately prepare his case when denied both cross-examination and access to the relevant evidence.

**B.**

The Secretary argues that, even discounting the negative X-ray readings, sub-

---

**5.** 20 C.F.R. § 404.926 provides in pertinent part: "When reasonably necessary for the full presentation of a case, a presiding officer or a member of the Appeals Council, *may,* either upon his own motion or upon the request of a party, issue subpoenas for the attendance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents which are relevant and material to any matter in issue at the hearing." (Emphasis added)

20 C.F.R. § 410.639 is identical except that it substitutes "Administrative Law Judge" for "presiding officer." The regulations are couched in permissive terms; clearly the issuance of a subpoena is within the sound discretion of the hearing examiner/administrative law judge. *See United States v. Becker,* 444 F.2d 510, 511 (4th Cir. 1971). When the Su-

preme Court spoke of a claimant's "right" to subpoena, we think the reference was to his right to *request* issuance of a subpoena—not his absolute right to have a subpoena issued upon request.

**6.** We emphasize that our holding today is a narrow one which will not "spell the end of the consultant system," as counsel for the Secretary opined at oral argument. Although the presence of the consultants at hearings would undoubtedly improve the factfinding process, we agree that in many instances it would be too heavy a burden for consultants to travel to distant hearings in response to subpoenas. However, where the consultant is not subpoenaed, fairness demands that his report—and the X-ray(s) on which his report is based—be made available to the claimant upon request.

stantial evidence exists to support the finding of no disability. On this record we cannot agree. Dr. Howes' report contains an inherent ambiguity: the designation "R/O pneumoconiosis," the meaning of which is disputed by the parties. There is also an open question concerning the fair inference to be drawn from Dr. Shaffer's X-ray reading, and claimant's arguments on this point should be initially addressed at the administrative level.[7]

Conversely, the claimant asks this court to simply remand the case to the district court for an award of benefits. *E. g., Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978). Although we agree that claimant has presented a strong case of total disability due to pneumoconiosis, it is not the function of this court to weigh conflicting evidence or assess the credibility of witnesses. *E. g., Taylor v. Weinberger*, 528 F.2d 1153 (4th Cir. 1975). We therefore remand the case to the Secretary with instructions that certain errors and inconsistencies be addressed in any further proceedings.

First, we cannot understand the ALJ's uncritical preference for the negative readers and his rejection of the positive X-ray evidence. A review of the physicians' credentials, obtained from standard sources, reveals the following:

| Positive Readers | Radiology Practice | Board Certified (Radiology) | A or B | Coal Field Practice |
|---|---|---|---|---|
| Harron | Yes | Yes | A | Yes |
| Nelson | Yes | No | A | Yes |
| Goerlich | Yes | Yes | B | Yes |
| Negative Readers | | | | |
| Jacobson | No | No | A | No |
| Soxman | No | No | A | ? |
| Rosenstein | Yes | Yes | B | No |

In spite of the fact that the positive readers' credentials were, as a whole, better than the negative readers', the ALJ almost entirely discounted the positive readings. On remand, assuming that the disputed X-rays are again entered into evidence in accordance with this opinion, the ALJ should articulate on the record the basis for any preference given the negative interpretations. *See Calabretta v. Secretary*, 427 F.Supp. 462, 464 (E.D.Pa.1976). Only then can this court properly discharge its duty to "scrutinize the record as a whole to determine whether the conclusions reached by the Secretary are rational." *Hunt v. Califano*, 445 F.Supp. 624, 627 (D.Md.1977).

Second, the ALJ noted in his recitation of the evidence that Dr. Nelson interpreted an X-ray as showing "mild emphysema which Nelson characterizes as $^2p$." But $^2p$ is a designation of pneumoconiosis, not emphy-

7. Claimant argues that many doctors do not consider simple pneumoconiosis medically significant. Further, pneumoconiosis is difficult to diagnose by X-ray, and emphysema may cloud an X-ray rendering the diagnosis of pneumoconiosis even more difficult. Thus, unless a radiologist is specifically asked to determine pneumoconiosis as a routine matter or in a specific case, there is no assurance that the absence of pneumoconiosis on the report represents a medical opinion.

We express no view on the merits of this argument or its application to Dr. Shaffer's X-ray report.

sema, and this error should be corrected on remand.[8]

■ Finally, the Secretary argues on appeal that denial of benefits was supported by negative X-rays and "consideration of physical examination results that showed a normal chest expansion." We agree with claimant that a finding of normal chest expansion cannot be used to rebut three positive X-rays, and on remand this finding should be considered in proper perspective.

### III.

■ Entitlement to black lung benefits under the Act is conditioned on proof of three basic elements: (1) that claimant is or was a miner, (2) that claimant is totally disabled due to pneumoconiosis, and (3) that his pneumoconiosis arose out of his coal mine employment. *See Petry v. Califano,* 577 F.2d at 861. There is no question in this case that claimant has established the first and third elements. It is the second element which is in dispute.

On remand, the Secretary should analyze this claim not only under 20 C.F.R. § 410.-490(b) (the interim criteria) and 20 C.F.R. § 410.416 (the ten year presumption), but also under 20 C.F.R. § 410.414(b). That section provides in pertinent part:

"(1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.

\* \* \* \* \* \*

(3) The provisions of this paragraph shall apply where a miner was employed for 15 or more years in one or more of the Nation's underground coal mines . . .."

Although the ALJ limited claimant to proof of 10 years coal mine employment, it is apparent from this record that he can prove more than 15 years. He testified personally about his work experience and his breathing problems, and this testimony was corroborated by his wife and co-workers. In addition, Dr. Nelson, Dr. Harron and Dr. Shaffer all diagnosed emphysema. (Dr. Nelson and Dr. Harron, of course, diagnosed pneumoconiosis as well.) We think claimant is entitled to have the Secretary determine under 20 C.F.R. § 410.414(b) whether he is suffering from a chronic respiratory or pulmonary impairment which would entitle him to benefits under the Act.

### Conclusion

Because we agree with the district court that the Secretary was not entitled to rely on the negative X-rays as substantial evidence to deny the claim, because the claim was not analyzed under all applicable provisions of the Act, and because certain errors of law and fact must be corrected, we affirm the district court and remand the case to the Secretary for further proceedings not inconsistent with this opinion.

*AFFIRMED.*

---

**8.** Dr. Nelson actually diagnosed both pneumoconiosis *and* emphysema. See § III, *infra.*