884 F.2d 580
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NIECE MINING COMPANY, Petitioner,
v.
Loretta M. QUILLEN and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 88-4170.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1989.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and THOMAS G. HULL, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Niece Mining Company (Niece or employer) appeals from a decision of the Benefits Review Board (Board), United States Department of Labor, which affirmed an administrative law judge's (ALJ) grant of black lung benefits to claimant, Loretta Quillen. Niece asserts on appeal that the ALJ's decision that claimant is entitled to benefits is not supported by substantial evidence. Niece also asserts that the release form signed by claimant either bars the imposition of liability upon Niece or entitles Niece to an offset against any amounts due for black lung benefits. For the following reasons, we find Niece's arguments to be without merit, and we affirm the decision of the Board.
 
 I.
 
 2
 Loretta Quillen filed an application on March 31, 1978, for black lung disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969 (the Act), as amended, 30 U.S.C. Sec. 901, et. seq. Claimant is the surviving spouse of deceased miner Henry Quillen. The miner died in a rockfall on July 13, 1974, at the age of fifty. The miner was working for Niece at the time of the fatal coal mine accident. In January of 1980, the Office of Workers' Compensation Programs made an initial finding of entitlement to benefits and named Niece as the responsible operator. Niece subsequently requested a hearing which was held in July 1986.
 
 
 3
 In March 1987, the ALJ issued his decision finding that claimant is entitled to benefits. Although there was no medical evidence available for consideration, the ALJ found that the lay evidence submitted was sufficient to invoke the presumption of a totally disabling respiratory impairment. The ALJ concluded that Niece was unable to rebut the presumption of total disability. The ALJ further found that the sum of $36,000, paid to claimant pursuant to an agreement executed between her and Niece, represented compensation for the accidental death of claimant's husband, miner Henry Quillen. As a result, the ALJ refused to release Niece from liability for benefits or offset the liability by the $36,000. The Board affirmed the ALJ's decision in an unpublished opinion dated October 26, 1988. Niece now appeals to this court.
 
 II.
 
 4
 Niece's first claim on appeal is that the ALJ's decision that claimant invoked the presumption under 20 C.F.R. Sec. 727.203(a)(5) is not supported by substantial evidence. Specifically, Niece asserts that the lay statements received into evidence were an insufficient basis for a determination of total disability.
 
 
 5
 Before proceeding to the issue at hand, we note that the findings of an ALJ in a black lung case may not be set aside if they are "based on substantial evidence viewing the record as a whole, even if we would have taken a different view of the evidence were we the trier of facts." Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 486 (6th Cir.1985) (citing Moore v. Califano, 633 F.2d 727, 729 (6th Cir.1980)). Substantial evidence is "more than a mere scintilla"; substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 6
 The ALJ correctly evaluated this case pursuant to the provisions of 20 C.F.R. Sec. 727.203.[1] This section states in relevant part:
 
 
 7
 (a) Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:
 
 
 8
 .............................................................
 
 
 9
 ...................
 
 
 10
 * * *
 
 
 11
 (5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.
 
 
 12
 The claimant did establish at least ten years of coal mine employment. Subsections (1)-(4) of section 727.203(a) address medical evidence which, if qualifying, can invoke the presumption. As previously noted, however, no medical evidence was submitted in this case. The ALJ noted in his report that the only "possible" medical evidence was the miner's death certificate, signed by a deputy coroner, who may have been a lay person. (App. 24). The cause of death was listed as crushed skull, broken neck, crushed chest, broken leg, ankle, and arms, and ribs completely smashed. No autopsy was performed.
 
 
 13
 Subsection (5) of section 727.203(a) applies in a case such as this one where no medical evidence is available. The lay evidence submitted included claimant's testimony at the hearing, an application and affidavit submitted by claimant, and six signed statements by people who knew claimant, including a work associate, a neighbor, friends, and relatives. Each of these six statements addressed the author's observations of the miner's frequent coughing, difficulty breathing, complaints of chest pain, and "smothering" complaints. The claimant's affidavit indicated that the miner had trouble sleeping at night due to "smothering," that he coughed a lot, "spit up bloody phlegm," and complained of chest pains. She stated that the miner had these symptoms for about seven years prior to his death. She also explained that he "couldn't climb hills or walk very far. He was short winded and also his leg would give away on him sometime, but he still worked."
 
 
 14
 The ALJ concluded that this lay evidence was sufficient to establish the presumption of a totally disabling respiratory or pulmonary impairment. Niece argues here that the lay evidence did not provide enough information on which to base a determination of total disability. Niece asserts that since one of the lay statements noted that the miner "wouldn't go to the doctor or miss a day's work," the miner was not totally disabled. Niece also asserts that the claimant's statement was insufficient because she attributed the miner's inability to climb hills on both breathing problems and leg problems and, furthermore, she did not specify the distances or types of hills that she was referring to in order to enable the ALJ to correlate these limitations with the miner's employment.
 
 
 15
 We decline to undertake a detailed analysis of the evidence, for such is the job of the ALJ and, instead, upon a review of the evidence, we conclude that there is substantial evidence to support the ALJ's determination that the miner was disabled by pneumoconiosis. Niece has raised points arguably contrary to a finding of total disability, but these points do not preclude an opposite finding if supported by substantial evidence. Niece places great weight on the fact that the miner "wouldn't miss a day's work." The Fourth Circuit has stated relative to this contention that "[w]hen a disabled coal miner chooses to make a heroic effort to work, even when physically unable to do so, he or his family should not be deprived of benefits which Congress intended." Collins v. Mathews, 547 F.2d 795, 799 (4th Cir.1976).
 
 
 16
 Niece also argues that the ALJ failed to consider that the miner was working at his usual coal mine employment. This argument is actually an assertion that the ALJ erred in failing to find that Niece rebutted the presumption of total disability. Section 727.203(b) states:
 
 
 17
 (b) Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 18
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 19
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title); or
 
 
 20
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 21
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 22
 Niece argues that the miner's earnings prior to his accidental death were at an all-time high, that his attendance records were excellent, and that he was working at his usual coal mine job.
 
 
 23
 Section 727.205(a) precludes the use of coal mine employment at the time of death as conclusive evidence that the miner was not totally disabled. The Board has held that the employer must show that the miner's work performance at the time of death was usual (indicative of no reduced ability to perform coal mine work) in order to successfully rebut a finding of total disability. Martin v. Regina Fuel Corp., 6 B.L.R. 1-1206 (1984). The ALJ noted that the evidence indicated that the miner had been employed as an underground coal miner, coal loader, machine man, and cutting machine operator. At the time of the miner's death, he was working at a mine which was not the locale of his usual employment. The miner was showing other miners how to "face up" a mine. The ALJ determined that Niece was unable to establish rebuttal under section 727.203(b)(1) because there was no evidence that the miner was doing his usual coal mine work. Niece argues in its brief to this court that the miner was simply engaged in extra work on a Saturday at the time of his death. Niece, however, offers no substantiation for this claim and had an opportunity to make this argument before the ALJ. Since the burden was on the employer to rebut the presumption of the miner's total disability at the time of death, and the employer failed to meet this burden, we conclude that there is substantial evidence to support a finding of no rebuttal under section 727.203(b)(1).
 
 III.
 
 24
 Niece also claims on appeal that an agreement, signed by Loretta Quillen, bars any liability being imposed on Niece for black lung benefits. The agreement, entitled "release," states as follows:
 
 
 25
 THAT FOR AND IN CONSIDERATION of the payment of the premiums by Niece Mining Company, Inc., for the life insurance policies issued by Great Fidelity Life Insurance Company and United Fire Insurance Company on the life of H.W. Quillen, and the payment of the benefits of $36,000 under said policies, in full payment of all claims and demands, we, Loretta Meade Quillen, widow, and Loretta Meade Quillen, Administratrix of the Estate of H.W. Quillen, deceased, do hereby release and forever discharge Niece Mining Company, Inc., and Ray Bates and Wilford Niece, d/b/a B & W Coal Company, their officers, agents and employees, from any and all actions, causes of action, claims and demands for, upon and by reason of injuries to and loss of the life of, and loss and damage to the property of, my deceased husband, H.W. Quillen, in consequence of an accident whereby said H.W. Quillen was fatally injured in Red Fox, Knott County, Kentucky, on July 13, 1974, and on every other account whatsoever.
 
 
 26
 (App. 49). This release was signed by Loretta Quillen on November 15, 1974, which is approximately four months after the miner's death. The ALJ found that there is no authority under the Act for parties to enter into a settlement, and that this release is contrary to the purposes of the Act. The Board affirmed on the same grounds. (App. 13).
 
 
 27
 The issue raised here calls upon us to review a question of law--namely, whether a claimant can be precluded from obtaining black lung benefits because of a release agreement executed between the claimant and the responsible operator. Our review of Board decisions on questions of law is plenary. Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1119 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985).
 
 
 28
 Claimant asserts that the ALJ correctly found that release agreements cannot circumvent liability under the Act, and that the clear language of the release agreement indicates that it pertains only to claims arising from injuries or the death of the miner. The claimant's reasoning then proceeds to the conclusion that because the miner's death was not related to his pneumoconiosis disability, the claim for benefits is unaffected by the release. The Director, Office of Workers' Compensation Programs, has submitted a brief in this case addressing only the issues related to the release agreement and taking no position on the first issue related to invocation of the presumption, discussed supra. The Director asserts that the release agreement is invalid insofar as it purported to waive claimant's right to black lung benefits.
 
 
 29
 Upon our review of the applicable law, we are in agreement with the Board and with appellees that there is no authority under the Act for releases or settlement agreements. Section 915(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C., as incorporated by 30 U.S.C. Sec. 932(a), states that "[n]o agreement by an employee to waive his right to compensation under this chapter shall be valid." Section 916 of 33 U.S.C., similarly incorporated, provides that "[n]o assignment, release, or commutation of compensation or benefits due or payable under this chapter, except as provided by this chapter, shall be valid...." The Secretary of Labor has implemented section 916 by a regulation set forth at 20 C.F.R. Sec. 725.515:
 
 
 30
 Except as provided by the act and this part, no assignment, release, or commutation of benefits due or payable under this part shall be valid, and all benefits shall be exempt from claims of creditors and from levy, execution, and attachment or other remedy or recovery or collection of a debt, which exemption may not be waived.
 
 
 31
 These sections operate as a general bar to settlements. See S.H. Du Puy v. Director, OWCP, 519 F.2d 536, 538 (7th Cir.1975), cert. denied, 424 U.S. 965 (1976). We therefore hold that the release agreement executed by Niece and the claimant does not bar liability being imposed upon Niece for black lung benefits.
 
 IV.
 
 32
 Niece's final claim on appeal is that, if the release agreement is determined to not preclude liability for black lung benefits, Niece is nonetheless entitled to a credit of $36,000, representing the amount paid to claimant under the release agreement. Both claimant and the Director assert that Niece is not entitled to a credit.
 
 
 33
 The ALJ denied Niece's claim of entitlement to an offset. The basis for this denial is 20 C.F.R. Sec. 725.533, which lists the circumstances in which a modification of benefit amounts is required. These circumstances pertain to the receipt of other federal or state benefits for disability due to pneumoconiosis. See also 20 C.F.R. Sec. 725.535. Therefore, the ALJ found that because there was no evidence that the $36,000 was for anything other than compensation for the miner's accidental death, Niece was not entitled to an offset. The Board affirmed on the same basis. Upon our review, we similarly conclude that there is no authority under the Act for an offset due to this lump-sum payment.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas G. Hull, Chief Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Although the miner died before March 1, 1978, and had over twenty-five years of coal mine employment, the claimant was unable to show that the twenty-five years of employment occurred prior to June 30, 1971 and, therefore, claimant was not entitled to the presumption at 20 C.F.R. Sec. 727.204. The claim was consequently evaluated pursuant to section 727.203