577 F.2d 860
 Herman K. PETRY, Appellant,
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare, Appellee.
 No. 77-1640.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 11, 1978.
Decided May 18, 1978.
 
 Richard W. Crews, Beckley, W.Va. (E. Carl Meadows, Meadows & Crews, Beckley, W.Va., on brief), for appellant.
 Rebecca A. Betts, Asst. U. S. Atty. (Robert B. King, U. S. Atty., and Steven L. Jones, Sp. Asst. U. S. Atty., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, and BUTZNER and HALL, Circuit Judges.
 K. K. HALL, Circuit Judge:
 
 
 1
 Herman K. Petry appeals from an order of the district court affirming a decision of the Secretary of Health, Education and Welfare that he was not entitled to "black lung" benefits sought pursuant to Part B of the Federal Coal Mine Health and Safety Act of 1969, as amended, (the Act) 30 U.S.C. § 901, et seq., and the regulations promulgated thereunder. Our scope of review is confined to ascertaining whether the Secretary's denial was supported by "substantial evidence." If such support exists, we must affirm. If not, we must reverse. 30 U.S.C. § 923(b), incorporating by reference § 205(g) of the Social Security Act, 42 U.S.C. § 405(g); see Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968). In the instant case we conclude that there was not substantial evidence to support the Secretary's decision, reverse the district court's order and direct it to remand the case to the Secretary to enter an award for the claimant.
 
 I.
 BASIC ENTITLEMENT
 
 2
 Entitlement of black lung benefits under the Act is conditioned on the proof of three basic elements:
 
 1. That claimant is or was a miner; and
 
 3
 2. That claimant is totally disabled due to pneumoconiosis; and
 
 
 4
 3. That his pneumoconiosis arose out of his coal mine employment.
 
 
 5
 See 30 U.S.C. § 901; 20 C.F.R. § 410.410.
 
 
 6
 From an analysis of those elements, there is no question in this case (1) that claimant is or was a miner and (3) that if he is found to have contracted pneumoconiosis, that it arose out of his employment in the mines.[1] The second element is in dispute whether the claimant is totally disabled due to pneumoconiosis and we focus on this element.
 
 
 7
 Although this is a not a case in which the claimant has shown conclusively that he has pneumoconiosis, nevertheless, "if other evidence demonstrates the existence of a totally disabling[2] chronic respiratory or pulmonary impairment," and the claimant "was employed 15 or more years in one or more of the Nation's underground coal mines," he is entitled to a rebuttable presumption that the disability is due to pneumoconiosis.[3] In this case, there is no dispute that Petry has met the fifteen year requirement,[4] and from our review of the record we hold also that he presented other evidence demonstrating the existence of a totally disabling chronic respiratory impairment and that the Secretary's findings to the contrary were not supported by substantial evidence.
 
 II.
 THE § 410.414(b) PRESUMPTION
 
 8
 The question of when the presumption in 20 C.F.R. § 410.414(b) is created is the crucial issue here, for the Secretary found that the claimant did not provide "other evidence" sufficient to raise the presumption.[5] Although several other cases have found the presumption met on their own facts, none have specified exactly why the presumption was met and why the Secretary was wrong in saying that the claimant had not carried his burden. See e. g., Bozwich v. Mathews, 558 F.2d 475, 480 (8th Cir. 1977); Henson v. Weinberger, 548 F.2d 695, 698-99 (7th Cir. 1977). Any analysis of the facts of this case hinges upon a clear understanding of the presumption created in § 410.414(b), especially in light of the relevant congressional intent surrounding 30 U.S.C. § 921(c)(4),[6] the parent statute of § 410.414.A.
 
 CONGRESSIONAL INTENT
 
 9
 After passage of the Federal Coal Mine Health and Safety Act of 1969, statistics revealed that in the following three years, almost fifty percent of disability claims were denied. S.Rep. No. 743, 92d Cong., 1st Sess., reprinted in (1972) U.S. Code Cong. & Admin. News pp. 2305, 2307. Although negative or inconclusive X-ray evidence was the greatest single reason for the large percentage of denials, Id. at 2313, research showed that in twenty-five percent of the cases where X-ray evidence was negative, autopsies performed after the miners' deaths demonstrated the presence of pneumoconiosis. Id. at 2314, 2316. Additionally, other evidence presented to Congress revealed that miners suffered from other respiratory impairments at rates greater than those of the general public. Id. at 2314.
 
 
 10
 To aid the miner in pursuing black lung benefits,[7] Congress enacted the 1972 amendments to the Act, which, among other things, created the presumption found in 30 U.S.C. § 921(c)(4) and implemented in 20 C.F.R. § 410.414(b). The Secretary also was required to consider all relevant evidence of disability, and not just one or two objective tests. 30 U.S.C. § 923(b). Finally, Congress indicated the liberality with which it intended the amended Act to be construed when it said:
 
 
 11
 The Black Lung Benefits Act of 1972 is intended to be a remedial law to improve upon the 1969 provisions so that the cases which should be compensated, will be compensated. In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors.
 
 
 12
 S.Rep. No. 743, 92d Cong., 1st Sess., reprinted in (1972) U.S. Code Cong. & Admin. News p. 2315. See generally Bozwich v. Mathews, 558 F.2d 475, 478-79 (8th Cir. 1977). This latter principle was given effect in Henson v. Weinberger, supra, where the court stated:
 
 
 13
 The Committee made clear the desire that evidence submitted by a miner's physician be considered, . . . and the claimants, particularly after 15 years or more of work in a coal mine, be given the benefit of the doubt . . . .
 
 
 14
 548 F.2d at 699. A close reading of the cases from other circuits indicates that there are several stages in the claims procedure wherein the benefit of doubt could be resolved in favor of the claimant. However, the following language reveals that Congress considered the doubt to have been resolved in favor of the disabled miner when it enacted the 1972 amendments:
 
 
 15
 The Committee bill gives the benefit of the doubt to claimants by prohibiting denial of a claim solely on the basis of an X-ray, by providing a presumption of pneumoconiosis for miners with respiratory or pulmonary disability where they have worked for 15 years or more in a coal mine, and by requiring the Social Security Administration to use tests other than the X-ray to establish the basis for a judgment that a miner is or is not totally disabled due to pneumoconiosis.B.
 
 ANALYSIS OF THE PRESUMPTION
 
 16
 With the Congressional intent and findings as guideposts, we turn to an analysis of the presumption contained in 20 C.F.R. § 410.414(b). As noted above, the claimant must establish two elements in order to trigger the presumption:
 
 
 17
 1. Fifteen years of employment in the mines; and,
 
 
 18
 2. Other evidence (other than X-rays, biopsy or autopsy) demonstrating the existence of a totally disabling chronic respiratory impairment.
 
 
 19
 The burden is on the claimant to establish these two elements by a preponderance of the evidence, and, if the claimant fails to establish either or both of the two elements of § 410.414(b), then the presumption fails and the claim should be denied insofar as it is based on the presumption. However, if the two elements are established from all the evidence, then the burden of going forward with the evidence shifts to the Secretary, Prokes v. Mathews, supra at 1060, and he must make one of two findings to rebut the presumption:
 
 
 20
 1. That the miner does not have pneumoconiosis; or,
 
 
 21
 2. That the respiratory or pulmonary impairment did not arise out of employment in the coal mines.
 
 
 22
 20 C.F.R. § 410.414(b)(2). If neither of these findings is made, the presumption accorded the claimant is not rebutted, and he should be awarded benefits. As usual, the Secretary must state clearly on the record his findings and precise reasons therefor.
 
 III.
 THIS APPEAL
 
 23
 Application of this legal analysis to the instant claim is now proper. The Secretary admits that the claimant meets the fifteen-year requirement of the presumption, but denies that claimant has demonstrated a totally disabling chronic respiratory impairment. Therefore, it becomes necessary to review the record to determine whether the Secretary's decision is supported by substantial evidence.
 
 
 24
 In support of establishing that he has a totally disabling chronic respiratory impairment, claimant relies on the following:
 
 
 25
 1. X-ray readings by plaintiff's doctors;
 
 
 26
 2. Pulmonary function studies;
 
 
 27
 3. Blood-gas tests;
 
 
 28
 4. Lung scan results;
 
 
 29
 5. Personal physical examination by three doctors, including a long-time treating physician, and the results of their tests;
 
 6. Claimant's own testimony; and
 
 30
 7. A total review of claimant's medical record and a physical examination by Dr. John M. Daniel, Chief of Medicine at Beckley Hospital.
 
 
 31
 To support the finding that plaintiff is not totally disabled due to a chronic respiratory impairment, the Secretary relies on different interpretations of the same evidence, and in addition, the Secretary places great, if not determinative weight on the testimony of Dr. W. Keith C. Morgan, Chief of the Division of Pulmonary Diseases at the West Virginia University Medical School, who reviewed the findings of plaintiff's physicians and the tests they administered.
 
 1. X-rays
 
 32
 The Act and regulations prohibit denying a claim for benefits solely on the basis of negative X-rays. 30 U.S.C. § 923(b); 20 C.F.R. § 410.414(c). Furthermore, it is by the use of evidence other than X-rays, biopsies or autopsies that the presumption of § 410.414(b) is raised, and it is likewise by a finding that the other evidence does not demonstrate a totally disabling chronic respiratory impairment that the existence of the presumption is defeated. Therefore, the inconclusive or contradictory results of the X-rays inure to the benefit of neither party.2. Pulmonary function studies
 
 
 33
 The Secretary's finding that the pulmonary function studies did not help demonstrate claimant's asserted total disability was supported by substantial evidence. Of the four tests conducted, only three were found credible by the Secretary, and we believe that the record supports the finding that the fourth test was not credible.[8] Plaintiff's own physicians reported that the three credible tests rendered normal results, and therefore, claimant's assertion that his pulmonary function study values were abnormal and indicate that he is totally disabled is not supported by the record.
 
 3. Blood-gas tests
 
 34
 The blood-gas tests administered by claimant's physicians did indicate to the conducting physician, and to Dr. Daniel, who reviewed the record, that claimant had a disturbance in the ventilation to perfusion relationship, leading to total disability, even though the reported values were not within the range of values necessary to establish a presumption of disability under the regulations. See Appendix to Part D of the regulations, 20 C.F.R. § 410.401 et seq. Without ever examining the claimant, Dr. Morgan stated in his report, "Granting that such a minimal reduction is present, I cannot but feel that it is more likely a consequence of the patient being overweight." Such a finding, by a physician who never examined claimant, creates a bald factual dispute in the credible evidence, and although disputes concerning test results must be resolved by the Secretary, substantial evidence did not exist to deny the claimant the benefit of his physicians' interpretations of the blood-gas tests. Therefore, the blood-gas test should be considered as demonstrating a disturbance in the ventilation to perfusion relationship.
 
 4. Lung scan
 
 35
 Dr. B. B. Richmond conducted a lung scan which he interpreted as "totally consistent with chronic obstructive pulmonary disease of a coal worker's pneumoconiosis type," and Dr. Daniel, in reviewing this lung scan, stated that "(t)hese studies indicate a disturbance in the ventilation to perfusion relationship," leading to total disability. In response to these findings, Dr. Morgan found that the lung scan did not demonstrate simple coal miner's pneumoconiosis, but could be the product of numerous other diseases. Even if the Secretary adopted Dr. Morgan's evaluation of the lung scan and totally discredited the findings of Dr. Richmond and Dr. Daniel, Dr. Morgan's assessment of the lung scan as indicative of other diseases does not disprove a finding of total disability due to chronic respiratory impairment.
 
 5. Physical examination
 
 36
 Claimant was examined personally on several occasions by three physicians, one of whom had treated claimant for several years. All found claimant had black lung, and two found claimant totally disabled. Claimant's physicians, though basing their conclusions in part on disputed tests and X-rays, also based their conclusions on their actual physical examination of claimant. For instance, Dr. D. L. Rasmussen, after observing claimant exercise, stated that claimant "had considerable difficulty completing the 2.0 mph 15% grade exercise stint." After claimant completed an exercise tolerance test for Dr. E. S. Hamilton, the doctor made the following notation: "Coughing/wheezing/dyspoenic (sic)." The Secretary offered no evidence to rebut the findings and conclusions of either Dr. Rasmussen or Dr. Hamilton. A physical examination is one type of medical evidence to be considered by the Secretary, 30 U.S.C. § 923(b), and, the Secretary was not free to ignore these findings.
 
 6. Claimant's own testimony
 
 37
 Although "primary consideration is given to the medical severity of the individual's pneumoconiosis," 20 C.F.R. § 410.422, the testimony of the claimant is relevant in proving a totally disabling chronic respiratory impairment, and it was not rebutted by the Secretary. Here, claimant testified personally about his background, work experience and breathing problems. His testimony included the facts that his breathing problems lead to coughing, shortness of breath, inability to work in dusty places, rapid exhaustion from the least exertion, chest pains, and other similar occurrences.
 
 
 38
 The Secretary properly found that the claimant had at least 35 years of coal mining employment, and that he was entitled to the benefit of the presumptions arising therefrom.[9] Although claimant's length of employment in the mines does not create any presumption of disability, it is relevant in determining whether there is a totally disabling respiratory impairment. Phillips v. Mathews, 555 F.2d 1182, 1183 (4th Cir. 1977).
 
 7. Review of all medical records
 
 39
 Two doctors reviewed the entire medical records of the claimant. Dr. John M. Daniel concluded in his review, and from a physical examination of claimant, that Mr. Petry suffered from coal workers' pneumoconiosis and that he was "in no way capable of tolerating mild to moderate or heavy manual labor as is required in the coal mining industry."[10] Dr. W. Keith C. Morgan also reviewed claimant's records and concluded that the claimant did not suffer from any "abnormality", except for possibly being overweight. Dr. Morgan also attempted to rebut the objective data, including the test results and X-rays relied upon by plaintiff's physicians, but Dr. Morgan at no time personally examined claimant.
 
 
 40
 Since both doctors reviewed the same evidence, the often contradictory findings of each merely reflects the analysis of the evidence made above. One notable exception comes from the fact that Dr. Daniel actually examined the claimant and made the following statement:
 
 
 41
 He was hyper-resonnant (sic) to percussion throughout, particularly over the bases. His vocal and tactile fremitus were distant. He had inspiratory and expiratory dry wheezing rales with a prolongation expiratory phase.
 
 In response, Dr. Morgan stated:
 
 42
 The presence of hyperresonance to percussion and reduced vocal and tactile fremitus are very subjective findings influenced by the thickness of the chest wall. These are very subject to observer variation and error.
 
 
 43
 This exchange points out the major weakness in the Secretary's findings. Simply because the medical findings of Dr. Daniels are subjective in nature does not reduce their relevancy toward indicating a totally disabling chronic respiratory impairment, and simply because the doctor upon whose findings the Secretary placed great reliance did not personally examine the claimant does not mean that the subjective testimony of other physicians who did examine the claimant should be ignored or lightly regarded.[11]
 
 IV.
 CONCLUSION
 
 44
 A review of the evidence, in light of the appropriate legal standards, leads us to hold that claimant did establish the § 410.414(b) presumption by proving fifteen years of coal mine employment and the existence of a totally disabling chronic respiratory impairment. The blood-gas test, the lung scan, the claimant's own testimony, the review of the records by Dr. Daniel, and most importantly, the personal physical examination by the physicians demonstrate a totally disabling chronic respiratory impairment. The only pieces of evidence supporting the Secretary's decision are the normal pulmonary function tests and the critical analysis of some of claimant's evidence by Dr. Morgan. As discussed above, this evidence does not provide substantial evidence for the Secretary's conclusion.[12] Therefore, we find that the Secretary's decision was not supported by substantial evidence and that claimant did establish the presumption of 20 C.F.R. § 410.414(b). We reverse the district court and direct it to remand the case to the Secretary. Furthermore, considering the long period of time this claim has consumed, we see no need for further consideration of the entitlement issue. Our review of the evidence, the briefs, and oral arguments, indicates that the Secretary would be unable to rebut the presumption by proof either that the claimant did not suffer from pneumoconiosis, or that his impairment did not arise from his working in the mines.[13] Therefore, the district court should enter an order instructing the Secretary to award benefits to the claimant.
 
 
 45
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 The Secretary found that:
 The claimant is a 68 year old UMWA pensioner with 35 years of coal mine employment. The evidence therefore establishes the claimant's right to the benefit of the presumption that pneumoconiosis (actual or presumed), if established, arose out of his coal mine employment.
 See 20 C.F.R. § 410.416, which reads in pertinent part:
 (a) If a miner was employed for 10 or more years in the Nation's coal mines, and is suffering or suffered from pneumoconiosis, it will be presumed, in the absence of persuasive evidence to the contrary, that the pneumoconiosis arose out of such employment.
 
 
 [2]
 20 C.F.R. § 410.412(a) provides:
 (a) A miner shall be considered totally disabled due to pneumoconiosis if:
 (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time . . . and
 (2) His impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than 12 months.
 See also 30 U.S.C. § 902(f).
 
 
 [3]
 20 C.F.R. § 410.414 provides, in pertinent part:
 (a) General. A finding of the existence of pneumoconiosis as defined in § 410.110(o )(1) may be made under the provisions of § 410.428 by:
 (1) Chest roentgenogram (X-ray); or
 (2) Biopsy; or
 (3) Autopsy.
 (b) Presumption relating to respiratory or pulmonary impairment.
 (1) Even though the existence of pneumoconiosis is not established as provided in paragraph (a) of this section, if other evidence demonstrates the existence of a totally disabling chronic respiratory or pulmonary impairment (see §§ 410.412, 410.422, and 410.426), it may be presumed, in the absence of evidence to the contrary (see subparagraph (2) of this paragraph), that a miner is totally disabled due to pneumoconiosis, or that a miner was totally disabled due to pneumoconiosis at the time of his death.
 (2) This presumption may be rebutted only if it is established that the miner does not, or did not, have pneumoconiosis, or that his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.
 (3) The provisions of this paragraph shall apply where a miner was employed for 15 or more years in one or more of the Nation's underground coal mines; in one or more of the Nation's other coal mines where the environmental conditions were substantially similar to those in an underground coal mine; or in any combination of both.
 
 
 [4]
 See note 1 supra
 
 
 [5]
 A review of the regulations reveals why the creation or existence of the presumption becomes so important. Once the miner triggers the presumption, the Secretary not only has the burden of going forward with the evidence, Prokes v. Mathews, 559 F.2d 1057, 1060 (6th Cir. 1977), but the presumption can be rebutted only by showing (1) that the miner does not have pneumoconiosis, or (2) that his respiratory or pulmonary impairment did not arise out of employment in the coal mines. 20 C.F.R. § 410.414(b)(2)
 
 
 [6]
 30 U.S.C. § 921(c)(4) provides in pertinent part:
 (4) (I)f a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of this death he was totally disabled by pneumoconiosis. . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.
 
 
 [7]
 One of the purposes of the 1972 amendments was to
 Relax the often insurmountable burden of proving eligibility by prohibiting a denial of claims based solely on a negative chest roentgenogram and by presuming that miners with 15 years experience who are disabled by a respiratory or pulmonary impairment are disabled by pneumoconiosis . . . .
 S.Rep. No. 743, 92d Cong., 1st Sess., reprinted in (1972) U.S. Code Cong. & Admin. News p. 2306; see Ansel v. Weinberger, 529 F.2d 304, 306 (6th Cir. 1976).
 
 
 [8]
 The fourth pulmonary function study was found not credible because, in the opinion of experts, the test showed insufficient effort and other technical difficulties. There was substantial evidence to support this finding
 
 
 [9]
 See note 1 supra
 
 
 [10]
 This diagnosis would be the equivalent of finding the claimant totally disabled. See note 2 supra
 
 
 [11]
 The Secretary is free to require the claimant to be examined by a physician of the Secretary's choosing. 20 C.F.R. § 410.472
 
 
 [12]
 Ventilatory study results revealing values not indicative of respiratory impairment do not necessarily defeat the creation of the presumption in this case. 20 C.F.R. § 410.426; Bozwich v. Mathews, supra at 480 n. 5; Henson v. Weinberger, supra at 699; Ansel v. Weinberger, supra at 310
 
 
 [13]
 See note 5 supra