John SISLER, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 76–85–F(H).

United States District Court,
N. D. West Virginia,
Fairmont Division.

Dec. 6, 1979.

---

Allan N. Karlin, North Central West Virginia Legal Aid Society, Morgantown, W. Va., for plaintiff.

William D. Wilmoth, Asst. U. S. Atty., Wheeling, W. Va., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, District Judge.

In this action the Plaintiff seeks review of the final decision of the Secretary of Health, Education and Welfare (Secretary), denying his claim for black lung benefits filed under the provisions of §§ 411(a) and 412(a)(1) of the Federal Coal Mine Health and Safety Act of 1969, as amended. 30 U.S.C. §§ 921(a) and 922(a)(1). Review in this Court is based upon the provisions of 30 U.S.C. § 923(b) which expressly incorporate §§ 205(g) and (h) of the Social Security Act. 42 U.S.C. §§ 405(g) and (h). The case presently is pending before the Court on the cross motions of the parties for summary judgment.

The Secretary contends that the sole issue before the Court is whether the Secretary's decision is supported by substantial evidence. If this is so, and if the Secretary's decision is supported by substantial evidence on the record as a whole, then this Court is bound to affirm that decision. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Whiten v. Finch*, 437 F.2d 73 (4th Cir. 1971); *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972).

The Plaintiff, on the other hand, asserts that the Secretary made numerous legal errors in the determination of his claim so that the decision is not supported by sub-

stantial evidence. Plaintiff also contends that the evidence presently contained in the record demonstrates his entitlement to black lung benefits. Specifically, the Plaintiff argues that the Secretary committed the following errors: (1) erred as a matter of law in refusing to consider the results of a blood gas study submitted by the Plaintiff; (2) erred as a matter of law in totally ignoring the most recent pulmonary function test; (3) erred as a matter of law relying upon negative x-ray rereadings when he refused to subpoena the x-rays or the rereaders; and (4) contends that the Administrative Law Judge (ALJ) "displayed extreme hostility and a gross misunderstanding of the applicable law," and therefore denied the Plaintiff a fair hearing.[1]

Because of the numerous legal issues involved in this case, the Court will discuss *seriatim* each legal argument and the facts relevant thereto.

### I.

An abortive hearing was held on the Plaintiff's claim before ALJ Field on September 18, 1975. Counsel for the Plaintiff had requested, by communication dated September 10, 1975, that Judge Field issue subpoenaes (1) to require the appearance of physicians who had reread the Plaintiff's x-rays; and (2) to secure the Plaintiff's previously submitted x-rays. The ALJ stated that there had been insufficient time to issue the subpoenaes for the September 18th hearing. The ALJ continued the hearing so that the Plaintiff's request for the issuance of the subpoenaes could be considered in a timely fashion. Administrative transcript, pp. 74, 87. The case subsequently was reassigned to ALJ Toti and the hearing rescheduled for January 21, 1976. This ALJ denied the Plaintiff's request for the issuance of the subpoenaes. The Plaintiff contends that he was denied due process of law by the refusal of the ALJ to issue the subpoenaes inasmuch as the ALJ relied,

at least in part, upon the x-ray rereadings by the physicians whom the Plaintiff requested be subpoenaed. Review of the record demonstrates that the ALJ did, in fact, rely at least to a certain extent, upon the x-ray rereadings.

The Plaintiff also requested the ALJ to issue subpoenaes so that the Plaintiff's submitted x-rays would be produced at the hearing. This request also was denied. Counsel for the Plaintiff alleges that, although no request was made of the hospitals at which the x-rays were taken to produce the x-rays, counsel's prior experience had been that whenever x-rays were submitted to the Social Security Administration that they always remained with the Social Security Administration and were not returned to the facility of origin. This contention is unrebutted on this record.

This Court previously has held that a black lung claimant is denied procedural due process when an ALJ denies his request to subpoena certain physicians and then relies upon those physicians' reports as substantial evidence to deny the claim. *Souch v. Califano*, Civil Action No. 77–0003–C (N.D.W.Va. March 23, 1978). This case was affirmed by the Court of Appeals which held that:

> "[W]here a claimant's request to subpoena negative readers is denied and the disputed X-rays are not made available to him for inspection and re-reading, the Secretary may not use the X-rays as substantial evidence to deny the claim. *Richardson v. Perales*, [402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)] . . . and, while the use of interrogatories may to some degree be a substitute for cross examination of negative readers, . . . we do not think them sufficient to remedy a claimant's inability to adequately prepare his case when denied both cross examination and access to the relevant evidence." *Souch v. Califano*, 599 F.2d 577 (4th Cir. 1979).

---

1. Because of the Court's disposition of the first three issues, it has declined to consider the fourth.

■ It is thus clear, and this Court so finds, that the ALJ's refusal to issue subpoenaes to the physicians as requested by the Plaintiff, and the refusal to produce the x-rays at the hearing, denied the Plaintiff his right to due process, and violated the rule established in *Souch v. Califano, supra*. The presence of the interrogatories submitted to certain of the x-ray rereaders does not mitigate the denial of due process evident on the record in this case. Accordingly, the x-ray rereadings and opinions of the Social Security physicians cannot be substantial evidence upon which the Secretary can base his decision in this case.

## II.

■ The Plaintiff contends that the Secretary failed properly to consider medical evidence submitted by Dr. Donald Rasmussen. Although Dr. Rasmussen's report is based upon an examination conducted in 1975, it is clear that such evidence is relevant to the establishment of the Plaintiff's claim. See *Talley v. Matthews*, 550 F.2d 911 (4th Cir. 1977).

■ Dr. Rasmussen submitted a report and analysis of the results of an exercise blood gas test conducted on the Plaintiff. Based upon his findings, he concluded that the Plaintiff

"would appear to be incapable of performing steady work beyond sedentary work levels. A numerical estimate of the overall loss of functional capacity in this case would be placed in the neighborhood of 65%." Transcript at 201.

Also submitted with Dr. Rasmussen's report was a lengthy deposition in which he described and explained the exercise blood gas test used to evaluate the Plaintiff's condition. The ALJ's opinion absolutely demonstrates that he did, in fact, fail properly to consider this highly relevant evidence.

First, in reference to Exhibit 42, the deposition of Dr. Rasmussen wherein he explains his blood gas studies, the ALJ stated that

"Exhibit 42 is a statement made by Dr. Rasmussen. . . . It has no pertinence to the instant case. If Dr. Rasmus-

sen could not impress Congress with his views prior to the enactment of their legislation, certainly it would be presumptuous for me to attempt to alter those congressional views as propounded in the final act." Transcript at 67.

The ALJ missed the point here. The deposition was offered only as an explanation of a valid medical test conducted by an examining physician and should have been considered as other relevant evidence in support of the Plaintiff's claim. Failure explicitly to consider this and consider it as relevant evidence violates the rule enunciated in *Arnold v. Secretary of Health, Education and Welfare*, 567 F.2d 258 (4th Cir. 1978).

■ The ALJ did not merely disregard the medical views of an examining physician as noted above; he went on to misapply the law as it bears upon this case. Dr. Rasmussen concluded, on the basis of his blood gas test, that the Plaintiff was disabled from performing other than sedentary work. The ALJ interpreted Dr. Rasmussen's clinical findings in an opposite fashion, stating

"Finally, why has claimant failed to meet the test? Dr. Rasmussen's exercise testing precludes a finding of total disability. All of the pulmonary tests preclude a finding of total disability." Transcript at 70.

The ALJ erred in failing to consider the Rasmussen materials under § 411(c)(4) of the Act. 30 U.S.C. § 921(c)(4).

■ It may be that the ALJ rejected Dr. Rasmussen's report because the results for p02 and pCO2 exceeded the values set out in the table at 20 C.F.R. ¶ 410.490. If this is true, then the ALJ's determination comes perilously close to violating the basic principle enunciated in *Hubbard v. Califano*, 596 F.2d 623 (4th Cir. 1979). In *Hubbard* the court held that Social Security Ruling 73–37 was not valid. Although not directly controlling in this case, *Hubbard* would teach that, where certain test results do not meet regulatory table values, the Secretary nevertheless may not automati-

cally conclude that the evidence totally fails to have probative force in supporting a plaintiff's claim. Therefore, if the ALJ herein concluded that Dr. Rasmussen's report supported the denial of benefits merely because the values for pO2 and pCO2 exceeded the values in 20 C.F.R. 410.490, then he violated the rule of *Hubbard.*

■ The Plaintiff also argues that the Secretary erred by failing properly to consider as relevant evidence a report submitted by Dr. I. E. Buff. Dr. Buff concluded that the Plaintiff was qualified for black lung benefits based upon (1) a positive x-ray; (2) ventilatory study results; and (3) because he was functionally illiterate. The ALJ noted that Dr. Buff had made these conclusions "on a letterhead dated August 29, 1973". In addition to Dr. Buff's letter, at Transcript 181, the record contains three pages of the tracings and results of the ventilatory function studies, presumably to which Dr. Buff refers in his letter. Transcript 182–184. The ALJ never acknowledged the presence of this study nor the tracings. It appears that the test resulted in an $FEV_1$ equal to 2.3 and an MVV equal to 40.69 L./Min., results which demonstrate disability pursuant to 20 C.F.R. ¶ 410.490(b). It appears that the test was performed on August 24, 1973, and thus is the latest breathing test conducted on the Plaintiff. The ALJ totally ignored, or was not aware of, this evidence. It therefore appears, once again, that the ALJ violated the dictates of *Arnold v. Secretary, supra.*

■ In his brief, the Secretary argues that Dr. Buff's pulmonary function studies are invalid because there is no accompanying notation as to the Plaintiff's effort and cooperation. However that may be, the Secretary is not free totally to ignore what

otherwise must be considered as "other relevant evidence" under 20 C.F.R. ¶ 410.414. Moreover, review of the record demonstrates, as the Plaintiff argues in his brief, that "the Secretary's treatment of his own regulations is most contradictory". The Secretary apparently accepted the pulmonary function test results submitted by Dr. Joseph J. Renn, at Transcript 177, even though not accompanied by tracings. Such inconsistent treatment and evaluation of the evidence of record suggests to this Court a basic lack of fairness in consideration of the evidence.

■ In addition to Dr. Buff's letter dated August 23, 1973, at Transcript 181, accompanied by the tracings at Transcript 182–185, there is a conclusion that the Plaintiff was totally disabled made by Dr. Buff on a prescription pad, at Transcript 180. The ALJ referred to this conclusion and found that it was without the support of clinical findings and thus disregarded it. Once again, whether through inadvertence or neglect, the ALJ apparently failed to note the presence of the pulmonary function studies submitted by Dr. Buff; these clearly constitute "clinical findings". Moreover, it appears that Dr. Buff's conclusions were based upon an x-ray taken by Dr. C. W. Nelson for Dr. Buff and contained in the record at Transcript 162. Obviously, this also is a clinical finding to support Dr. Buff's conclusions.[2]

■ Accordingly, the Secretary's slipshod treatment of the medical evidence submitted by Drs. Rasmussen and Buff mandates reversal. The Secretary obviously violated the dictates of *Arnold v. Secretary, supra.* See also *Jenkins v. Califano,* 599 F.2d 1047 (4th Cir. 1979); *Pridemore v. Califano,* 610 F.2d 813 (4th Cir. 1979).

2. In *Sharpless v. Califano,* 585 F.2d 664 (4th Cir. 1978), the Court held that the Secretary was entitled to rely upon negative x-ray rereadings by contract rereaders as substantial evidence. In *Barnette v. Califano,* 585 F.2d 698 (4th Cir. 1978), the Court held that the Secretary may disregard a plaintiff's physician's conclusions when those conclusions are based upon x-rays that subsequently are reread as negative by contract rereaders. In this case,

because of the Secretary's failure to comply with the requirements of *Souch v. Califano, supra,* the negative x-ray rereadings of the August 12, 1971, x-ray cannot be substantial evidence to discredit that x-ray. Accordingly, the Secretary is not free to discredit Dr. Buff's conclusion to the extent that it is based upon the August 12, 1971, x-ray by virtue of the subsequent negative rereadings of that x-ray by contract rereaders.

■ **333**

### III.

Plaintiff argues that he is entitled to black lung benefits pursuant to § 411(c)(4) of the Act, 30 U.S.C. § 921(c)(4), and its regulatory analog, 20 C.F.R. ¶ 410.414(b). At the time he made his decision, the ALJ did not have the guidance of the case of *Petry v. Califano*, 577 F.2d 860 (4th Cir. 1978). It appears to this Court that the ALJ failed to accord Plaintiff a proper determination of entitlement to the presumption contained in ¶ 410.414(b), as explicated in *Petry*. Moreover, this Court's analysis of the medical evidence of record, in light of *Petry*, demonstrates that the Plaintiff has established his right to benefits.

■ In order to invoke the presumption of § 411(c)(4) of the Act, and ¶ 410.414(b), the burden is upon the Plaintiff to demonstrate (1) fifteen years employment in coal mines; and (2) the presence of a totally disabling chronic respiratory impairment as demonstrated by "other evidence" (i. e., other than x-rays, biopsy or autopsy). *Petry*, at 864. In this case, the ALJ found that the Plaintiff had in excess of ten years coal mining employment. At the request of counsel for the Plaintiff, during the hearing conducted on January 21, 1976, the ALJ "agreed" that the Plaintiff had demonstrated more than thirty years coal mining employment. In his written decision, however, the ALJ stated that he had not agreed that the Plaintiff had demonstrated more than thirty years coal mining employment and found that the Plaintiff only had established more than ten years. The ALJ apparently believed that establishment of more than ten years mining employment was the only relevant issue. Obviously this is incorrect as the presumption contained in § 411(c)(4) and ¶ 410.414(b) requires a finding of fifteen years of coal mine employment. This Court's analysis of the record demonstrates that the Plaintiff has proven in excess of thirty years of coal mine employment. Therefore, the Plaintiff is entitled to the presumption of § 411(c)(4) and ¶ 410.414(b) provided that he can demonstrate the presence of a totally disabling chronic respiratory impairment.

■ This Court's duty now, as mandated by *Petry*, is to analyze the medical evidence of record to determine whether the Plaintiff demonstrated a totally disabling respiratory impairment.

*X-Ray Evidence.* In *Petry*, the Court stated that

"The Act and regulations prohibit denying a claim for benefits solely on the basis of negative x-rays. 30 U.S.C. § 923(b); 20 C.F.R. ¶ 410.414(c). Furthermore, it is by the use of evidence other than x-rays, biopsies or autopsies that the presumption of ¶ 410.414(b) is raised, and it is likewise by finding that the other evidence does not demonstrate a totally disabling chronic respiratory impairment that the existence of the presumption is defeated. Therefore, the inconclusive or contradictory results of the x-rays inure to the benefit of neither party." *Petry*, at 864.

It is thus clear that the x-ray evidence in this case is not a basis upon which the Plaintiff may establish a totally disabling respiratory impairment pursuant to ¶ 410.414(b). In this case, however, the violation of the rule enunciated in *Souch v. Califano*, vitiates the validity of the rereaders conclusions and, therefore, although evidence other than x-rays is necessary to establish disability pursuant to ¶ 410.414(b), the presence of positive x-rays, unrebutted by the negative rereadings herein, buttresses the credibility of the Plaintiff's "other evidence".

The x-ray evidence of record is as follows: an x-ray dated September 5, 1970, was interpreted by Dr. Harron, an A reader. His impression was "definite pneumoconiosis not seen". Dr. Harron did note that minor chronic abnormalities including moderate emphysema were present. This x-ray subsequently was reread by three B readers, Drs. Rosenstein, Spitz and R. H. Morgan, all finding the x-ray negative for pneumoconiosis. An x-ray dated August 12, 1971, taken by Dr. C. W. Nelson was interpreted as positive for pneumoconiosis, category 2–3p; Dr. Nelson also noted a "slight left ventricular prominence". This

film subsequently was reread by three B readers, Drs. Spitz, Gayler and Rosenstein, as negative for pneumoconiosis. An x-ray taken October 29, 1971, was interpreted by Dr. George Curry, as showing the lungs were generally clear and that the film was not positive for pneumoconiosis. Dr. Curry noted that the left ventricle was enlarged. This film was subsequently reread by Dr. Spitz as negative for pneumoconiosis and as not demonstrating any heart abnormality. Another x-ray by Dr. Nelson, dated June 19, 1975, was interpreted as positive for pneumoconiosis, category 2p, and also demonstrating mild to moderate emphysema. The final x-ray, dated December 29, 1975, taken by Dr. Goerlich was interpreted as positive for pneumoconiosis category 1/0q and also as demonstrating minimal left ventricular hypertrophy.

*Pulmonary Function Studies.* A pulmonary function study conducted November 26, 1972, at the Fairmont Clinic resulted in values which were in excess of the statutory criteria. A second study was conducted on April 24, 1973, by Dr. Joseph Renn which resulted in values that were within normal limits. The third and most recent study was done by Dr. I. E. Buff and resulted in an $FEV_1$ equal to 2.3 and an MVV equal to 40.69 L./Min., results that demonstrate disability pursuant to 20 C.F.R. ¶ 410.490(b). As discussed above, Dr. Buff did not designate the degree of Plaintiff's cooperation in completing this test. The failure of Dr. Buff to designate the degree of the Plaintiff's cooperation and performance of the test discredits the test to a certain extent. Nevertheless, the Secretary was under a duty to consider the test as relevant evidence.

■ It is clear that ventilatory studies that result in values in excess of the regulatory table values do not necessarily defeat the creation of the presumption contained in ¶ 410.414(b). *Petry, supra,* at note 12; 20 C.F.R. ¶ 410.426; *Bozwich v. Mathews,* 558 F.2d 475 (8th Cir. 1977). In this case, as in *Petry,* the failure of the Plaintiff to establish disability by virtue of the pulmonary function studies dated October 26, 1972, and April 24, 1973, do not necessarily defeat the establishment of disability.

*Blood Gas Tests.* The only blood gas study of record in this case is that submitted by Dr. Rasmussen and discussed above. The results of this test never were given proper consideration by the ALJ. Moreover, Dr. Rasmussen's conclusion that the Plaintiff suffered a 65% functional impairment is nowhere in this record rebutted.

*Physical Examinations.* The physical examination conducted by Dr. George Evans in February, 1973, resulted in diagnoses of emphysema and chronic bronchitis. Dr. Evans declined to express a medical assessment of the severity of the impairment stating that he could not make such a determination based upon the type of examination that he conducted. It also is clear that the blood gas studies conducted on the Plaintiff by Dr. Rasmussen involved certain aspects of a physical examination.

■ *Plaintiff's Testimony.* This Court recognizes that, although primary consideration is given to the medical evidence of the severity of the individual's respiratory condition, 20 C.F.R. ¶ 410.422, the Plaintiff's own testimony is relevant in proving a totally disabling chronic respiratory impairment. In this case the Plaintiff testified that he began working in underground coal mines in 1918 when he was eleven years old. This testimony was corroborated by the Plaintiff's sisters. He continued working in coal mining until 1940. At that time, upon the advice of a physician, the Plaintiff left mining and began hauling posts until his truck was wrecked in 1944. In 1944, the Plaintiff returned to the coal mines where he worked until 1964. Subsequent to 1964, and continuing for an undetermined number of years, the Plaintiff operated a business of garbage collection which grew from approximately 12 to roughly 300 customers. The Plaintiff testified that he had to quit this work because he was no longer able to walk up and down the hills and he could not lift.

The Plaintiff stated that he has never smoked cigarettes. He testified that he suffers from a severe and productive cough

and is able only to sleep two to three hours at a time. He further testified that he is able to walk only the short distance to his mailbox and that in doing so he has to rest two or three times.

 All of the Plaintiff's testimony is unrebutted. Accordingly, based upon that testimony, as well as the documents of record, this Court finds that the Plaintiff has in excess of thirty years of coal mining employment, and probably has in excess of forty years coal mining employment. As the Court recognized in *Petry, supra,* at 866, and *Phillips v. Matthews,* 555 F.2d 1182, 1183 (4th Cir. 1977) the Plaintiff's length of employment in the mines is relevant in determining whether there is a totally disabling respiratory impairment.

This Court's review of the evidence demonstrates that the Plaintiff did establish the ¶ 410.414(b) presumption by proving fifteen years of coal mine employment and the existence of a totally disabling chronic respiratory impairment. The blood gas test, Dr. Buff's pulmonary function study, Dr. Evans' physical examination report, and the Plaintiff's own unrebutted testimony lead the Court to this conclusion. Moreover, the probative value and credibility of the above noted "other evidence" is enhanced by the presence of the positive x-ray interpretations.

It appears to the Court that the Secretary would be unable to rebut the establishment of the claim upon the above noted evidence. First, the Act and regulations prohibit denying a claim for benefits solely on the basis of negative x-rays. 30 U.S.C. § 923(b); 20 C.F.R. ¶ 410.414(c); *Petry, supra,* at 864. The Secretary's decision was based in large part upon negative x-ray rereadings. The violation of *Souch, supra,* precludes the x-ray rereadings as providing support for substantial evidence. Additionally, the two pulmonary function studies which did not result in values below those established in the regulatory tables are not dispositive of the disability issue. That leaves the Court with the unrebutted reports of Drs. Buff, Evans and Rasmussen, the Plaintiff's own testimony, as well as the buttressing positive x-ray reports.

Accordingly, the Court finds: (1) that the Plaintiff has proven that he was employed in coal mines for more than fifteen years; (2) that he suffered from a totally disabling chronic respiratory impairment; and (3) that the respiratory impairment is presumed to have arisen from coal mine employment. Accordingly, the Plaintiff has established his right to black lung benefits. The Court further finds that the evidence of record suggests that the Secretary would be unable to rebut the Plaintiff's positive evidence should the Court remand for further consideration of the entitlement issue. Therefore, the Court hereby ORDERS that the case be REMANDED to the Secretary solely for the purpose of awarding the Plaintiff black lung benefits.

All matters in this case being concluded, the Court hereby ORDERS that this case is DISMISSED from the docket of this Court.