45 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Jerry HALL, Jr., Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor; Shell Ray Mining,
Incorporated; West Virginia Coal
Workers' Pneumoconiosis Fund,
Incorporated, Respondents.
 No. 94-1469.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1994.
Decided Jan. 4, 1995.
 
 ARGUED: Frederick Klein Muth, Hensley, Muth, Garton & Hayes, Bluefield, WV, for petitioner. Patricia May Nece, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC, for respondent Director; Konstantine Keian Weld, Office of the Attorney General of West Virginia, Charleston, WV, for respondent Pneumoconiosis Fund. ON BRIEF: Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Sol., U.S. Dept. of Labor, Washington, DC, for respondent Director; Darrell V. McGraw, Jr., Attorney General, Leah Q. Griffin, Asst. Atty. Gen., Charleston, WV, for respondent Pneumoconiosis Fund.
 Ben.Rev.Bd.
 REVERSED AND REMANDED.
 Before HALL and WILLIAMS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Jerry Hall, Jr., petitions for review of an order of the Department of Labor's Benefits Review Board (BRB) affirming the denial of his black lung claim. The Director, Office of Workers' Compensation Programs, urges us to reverse the order and direct an award of benefits, and we will do so.
 
 I.
 
 2
 Jerry Hall, Jr., born November 25, 1928, and armed with a fifth-grade education, went to work in the McDowell County, West Virginia, coal mines in 1956. Over the next 23 years, he worked more or less continuously for an array of small companies. His last job in the mines was setting jacks on a continuous miner. This job required him to set the 60to 70-pound jacks, pull and hang heavy electrical cable, shovel frequently, and carry 50-pound bags of rock dust for 65 feet. Hall smoked from boyhood until 1989.
 
 
 3
 In 1984, Hall filed this claim for black lung benefits, and he was examined by Dr. Wilmoth on May 25, 1984. Wilmoth administered pulmonary function and blood gas tests. The pulmonary function test revealed "depressed" performance, but not far enough below normal to be "qualifying" under the black lung regulations. An x-ray was positive for simple pneumoconiosis.
 
 
 4
 Wilmoth diagnosed chronic obstructive pulmonary disease and coal worker's pneumoconiosis. He opined that Hall could walk "maybe 1/2 mile," climb two flights of stairs, lift 40-50 pounds, and carry 40 pounds for 50 yards. Wilmoth did not compare these limitations with the requirements of Hall's usual coal mine employment or render an opinion about disability.
 
 
 5
 The Department of Labor denied the claim, and Hall requested a hearing. The responsible operator was identified as Shell Ray Mining, Inc., insured by the West Virginia Coal Workers' Pneumoconiosis Fund (CWP Fund). Neither Shell Ray nor the CWP Fund has contested liability for any benefits that might be awarded.
 
 
 6
 In preparation for the hearing, Hall was examined by Dr. Rasmussen on March 9, 1990. Rasmussen took a complete medical and occupational history, performed a thorough physical examination, and administered pulmonary function and blood gas tests, which again yielded below normal, but not "qualifying," values. He reviewed an x-ray that had been interpreted as positive for pneumoconiosis in all six lung zones. Finally, he conducted an treadmill exercise test for eleven minutes, during which he monitored Hall's coronary and pulmonary function. From all of these data and observations, Dr. Rasmussen diagnosed pneumoconiosis and gave this occupational prognosis:
 
 
 7
 [T]hese studies indicate moderate loss of respiratory function as reflected by the moderate irreversible obstructive airway ventilatory insufficiency. This degree of impairment would render this patient totally disabled for resuming his former coal mine employment with [its] attendant requirement for heavy and very heavy manual labor. Finally, Dr. Rasmussen stated that both pneumoconiosis and smoking are "undoubtedly responsible" for Hall's pulmonary insufficiency, and pneumoconiosis is "at least a major contributing factor."*
 
 
 8
 A hearing was held before an administrative law judge (ALJ) on June 27, 1990. The claimant appeared with counsel, but neither the operator nor the CWP Fund attended. The ALJ issued a decision denying benefits on March 22, 1991. The ALJ credited Hall with 20 years of coal mine employment, and he found the existence of pneumoconiosis by a preponderance of the x-ray evidence. 20 C.F.R. Sec. 718.202(a)(1). The causal relationship between the pneumoconiosis and coal mine employment was established by unrebutted presumption. 20 C.F.R. Sec. 718.302.
 
 
 9
 On the other hand, the ALJ found that Hall had not proven total disability. The results of the pulmonary function and blood gas tests, though below normal, were not independently qualifying (Secs. 718.204(c)(1) and (c)(2)), and there was no evidence of cor pulmonale with right-side congestive heart failure (c(3)).
 
 
 10
 Under Sec. 718.204(c)(4), total disability may be found based on a physician's opinion. The ALJ ruled that Dr. Wilmoth's report could not establish total disability because it failed to state an opinion on the ultimate issue. Dr. Rasmussen's report, which was not vulnerable to that criticism, was rejected because "his conclusion is not supported by objective laboratory data in the record."
 
 
 11
 The BRB remanded for reconsideration. It faulted the ALJ for not comparing the limitations noted by Dr. Wilmoth with the exertional requirements of Hall's past work, and it held that the ALJ impermissibly substituted "his own opinion for that of Dr. Rasmussen."
 
 
 12
 On remand, the ALJ simply expanded upon his prior faulty reasoning:
 
 
 13
 Dr. Rasmussen's opinion does not qualify as an exercise of reasoned medical judgment and cannot be given any weight under [ (c)(4) ] as the physician fails to account for the discrepancy between the pulmonary function results that qualify as totally disabling according to the regulations and those that qualify only according to his personal opinion. The regulations clearly set forth the level of pulmonary function test results which constitute a totally disabling pulmonary impairment. [cite omitted] In allowing claimants to establish total disability under Sec. 718.204(c)(4), the regulations allow claimaints to establish total disability either through demonstrating why certain qualifying pulmonary function tests or arterial blood gas studies should be favored over other non-qualifying tests, or through medically acceptable tests other than those set forth in Secs. 718.204(c)(1)-(3). The purpose of Sec. 718.204(c)(4) is not to allow one physician to substitute his judgment for what constitutes disability for the carefully considered judgment set out in the regulations. To fully credit Dr. Rasmussen's opinion as to what pulmonary function test results indicate total disability would render Secs. 718.204(c)(1)-(3) of the regulations a nullity.
 
 
 14
 On the contrary, to fully credit the ALJ's reasoning would render Sec. 718.204(c)(4) a nullity. See Poole v. Freeman United Coal Mining Co., 897 F.2d 888, 893 (7th Cir.1990) ("To accept [a similar] argument would be to read (c)(4) out of the [regulation].").
 
 
 15
 The ALJ rejected Dr. Wilmoth's report without fanfare: "Dr. Wilmoth reported that claimant was able to lift 40 or 50 pounds and to walk one-half mile. Absent contrary evidence, such physical limitations do not appear inconsistent with an ability to perform either claimant's usual coal mine work or comparable gainful work." The jacks Hall had to set for the continuous miner weighed over 60 pounds, so our critique of this finding should be self-evident.
 
 
 16
 This time the BRB upheld the denial of benefits, though nothing had really changed from the first appeal. Hall petitions for review.
 
 II.
 
 17
 The Director supports Hall and asks that the claim be remanded with directions to award benefits. The CWP Fund, which will have to pay those benefits, urges affirmance.
 
 
 18
 Section 718.204(c)(4) says (emphasis added):
 
 
 19
 Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in [his usual coal mine employment or comparable employment].
 
 
 20
 The Director argues that it has interpreted the underlined phrase to mean that a physician's opinion can establish disability notwithstanding that the pulmonary function and blood gas results are not independently "qualifying," and its interpretation is entitled to deference. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 137 (1987); Shuff v. Cedar Coal Co., 967 F.2d 977, 979 (4th Cir.1992), cert. denied, 113 S.Ct. 969 (1993).
 
 
 21
 Deference or not, that is what the regulation plainly says. The "qualifying" values are not talismans. "Nonqualifying" results are not necessarily normal results. Indeed, we have long held that test results that do not meet the table values may nonetheless provide proof of respiratory impairment, e.g., Prater v. Harris, 620 F.2d 1074, 1085 (4th Cir.1980), and do not in and of themselves disprove the miner's claim of disability. Hubbard v. Califano, 582 F.2d 319, 322 n. 6 (4th Cir.1978); see Sisler v. Califano, 484 F.Supp. 326, 331-332 (N.D.W. Va.1979). Dr. Rasmussen's opinion does not try to displace the "qualifying" values with some different standard of his own. He concludes simply that, from the depressed test results, abnormalities noted on a physical exam, and the "heavy to very heavy" exertional requirements of claimant's particular job, the claimant is totally disabled. That line of reasoning is precisely what (c)(4) contemplates.
 
 
 22
 As we noted above, the ALJ's analysis of Dr. Wilmoth's report was also faulty. Though Wilmoth did not render an opinion about Hall's ability to do his usual coal mine job, the limitations he described--had the ALJ compared them with the physical demands of that job--would certainly have lent corroboration to Dr. Rasmussen's opinion.
 
 
 23
 Because neither the operator nor the CWP Fund presented any evidence to contradict Dr. Rasmussen's opinion, the Director argues that on this record Hall is entitled to benefits as a matter of law. We agree. The final decision of the BRB is reversed, and the claim is remanded with instructions to award benefits.
 
 REVERSED AND REMANDED
 
 
 *
 Pneumoconiosis must be a "contributing," but not necessarily a self-sufficient, cause of disability for the miner to be entitled to benefits under the permanent regulations at 20 C.F.R. Part 718. Robinson v. Pickands Mather & Co., 914 F.2d 35 (4th Cir.1990)